No. 101,621

STATE OF KANSAS, *Appellee*, v. MYRON COLEMAN, *Appellant*.

(257 P.3d 320)

Review of the judgment of the Court of Appeals in an unpublished opinion filed May 14, 2010. Opinion filed August 12, 2011.

*Randall L. Hodgkinson,* of Kansas Appellate Defender Office, argued the cause, and *Sean G. Whittmore,* legal intern, was with him on the brief for appellant.

*Keith E. Schroeder,* district attorney, argued the cause, and *Thomas R. Stanton,* deputy district attorney, and *Steve Six,* attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

ROSEN, J.: On review of an unpublished opinion by the Court of Appeals affirming his convictions, Myron Coleman appeals from his bench-trial convictions of possession of cocaine with intent to sell, possession of cocaine without tax stamps, and possession of drug paraphernalia with intent to package a controlled substance for sale. He challenges the detention and search that produced the evidence leading to his convictions.

The events leading up to this appeal began at 12:30 in the morning of August 17, 2007, when Deputy Sheriff Matt Tatro stopped a car for speeding on a highway between Wichita and Hutchinson in Reno County and identified Coleman as the driver. Tatro determined that the car was rented and was registered to Conklin Cars of Hutchinson. The rental agreement had expired 2 days earlier, but Coleman explained that he had renewed the agreement over the telephone. The possibility of a telephone renewal struck Tatro as "odd."

As part of his normal procedures following a stop, Tatro ran a check on the driver and learned that Coleman was on parole. The stop at that point had lasted approximately 5 minutes. Tatro then received a call from Deputy Cory Griffiths, who was involved in the drug enforcement unit. Griffiths informed Tatro that deputies with the unit had "specific knowledge" that Coleman was moving cocaine between Wichita and Hutchinson. Ed Mora, a parole officer with the Kansas Department of Corrections, then called Tatro and reported that Coleman's parole officer had expressed concerns about Coleman's repeated trips between Wichita and Hutchinson. Mora asked Tatro to detain Coleman for a search.

Two backup officers arrived, and then, 35 minutes to an hour after the initial stop, Mora arrived at the scene. Mora informed Coleman that he was not under arrest, but he nevertheless placed Coleman in handcuffs. A search of Coleman's person produced $1,035 in cash, and a search of the car revealed small rocks loose on the front seat and larger rocks wrapped in plastic in a coffee cup; these rocks field tested positive for cocaine and subsequently lab-tested positive for cocaine. The search also produced a pair of latex gloves and a box of sandwich baggies.

Tatro ultimately did not give Coleman a ticket for speeding. The State eventually charged Coleman with one count of possession of cocaine with intent to sell, K.S.A. 65-4161; one count of possession of cocaine without tax stamps, K.S.A. 79-5204; and one count of possession of drug paraphernalia with intent to package a controlled substance for sale, K.S.A. 65-4152(a)(3).

Coleman filed a motion to suppress the seized evidence. The parties agreed to submit the motion based on written pleadings and the transcript of the preliminary hearing. The district court denied the motion, ruling that the circumstances of the stop and information available to the police, in combination with Coleman's parole status, sufficed to legitimize the search and that the search was not arbitrary or capricious. Coleman filed a motion for reconsideration, arguing that the court had applied an overly lenient burden to the State's evidence. The district court reconsidered the issue and denied the motion for reconsideration on different grounds, finding that the police had a reasonable suspicion justi-

fying the search. The court found that the grounds for the reasonable suspicion were that Coleman was on parole, that the car rental agreement had expired 2 days earlier, that an officer with the drug enforcement unit was "aware of information" that Coleman "was known" for trafficking drugs, and that Coleman's parole officer was aware of no reason for Coleman to be traveling from Wichita to Hutchinson.

The parties proceeded to a bench trial on stipulated facts. The district court found Coleman guilty of all three counts and sentenced him to a midrange sentence of 49 months for possession of cocaine and concurrent midrange sentences of 6 months and 11 months for failure to have a tax stamp and possession of drug paraphernalia. The Court of Appeals affirmed the convictions, and this court granted review.

Coleman challenges the admissibility of evidence discovered in the search of his rental car.

During a routine traffic stop, a law enforcement officer may request a driver's license, proof of insurance, and vehicle registration; run a computer check; and issue a citation. *United States v. Elliott*, 107 F.3d 810, 813 (10th Cir. 1997). As a general principle, the driver must be allowed to leave without further delay once the officer determines that the driver has a valid license and is entitled to operate the vehicle. *United States v. Wood*, 106 F.3d 942, 945 (10th Cir. 1997); *State v. Anderson*, 281 Kan. 896, 902, 136 P.3d 406 (2006).

An officer's inquiries or actions unrelated to the justification for an initial traffic stop do not convert the stop into an unlawful seizure so long as they do not measurably extend or prolong the stop. In the absence of consent, an officer may expand the duration of the investigative detention beyond an initial stop when the responses of a detainee and the circumstances relating to the stop give rise to suspicions unrelated to the traffic offense. The officer may then satisfy those suspicions, graduating the police response to the demands of the situation. *State v. Morlock*, 289 Kan. 980, 986-89, 218 P.3d 801 (2009) (citing *Arizona v. Johnson*, 555 U.S. 323, 129 S. Ct. 781, 172 L. Ed. 2d 694 [2009]). Further, an officer may expand the investigative detention beyond the purpose of the

initial stop only if there is an objectively reasonable and articulable suspicion that criminal activity was or is taking place. *United States v. Sharpe*, 470 U.S. 675, 682, 105 S. Ct. 1568, 84 L. Ed. 2d 605 (1985); *United States v. Williams*, 271 F.3d 1262, 1267 (10th Cir. 2001); *State v. Thomas*, 291 Kan. 676, Syl. ¶ 8, 246 P.3d 678 (2011); K.S.A. 22-2402.

The issues now before this court are whether the facts known to the officer created a reasonable suspicion of criminal activity that justified further investigation and extending the detention, and, if they did not, whether the officer had the authority to arrest Coleman and conduct a search incident to that arrest. Notwithstanding Mora's statement to Coleman that he was not under arrest when he was placed in handcuffs, Coleman was under arrest at that point in time. See K.S.A. 22-2405(1)

On a motion to suppress evidence, this court generally reviews the factual findings underlying the district court's suppression decision by a substantial competent evidence standard and the ultimate legal conclusion drawn from those factual findings by a de novo standard. The court does not reweigh the evidence. *State v. Ransom*, 289 Kan. 373, 380, 212 P.3d 203 (2009). When the parties do not dispute the material facts, however, the suppression question is solely one of law. *Thomas*, 291 Kan. at 682.

Whether reasonable suspicion exists is a question of law and is reviewed de novo. In reviewing an officer's belief of reasonable suspicion, an appellate court determines whether the totality of the circumstances justifies the detention. *State v. Walker*, 292 Kan. 1, Syl. ¶¶ 5, 6, 251 P.3d 618 (2011).

Reasonable suspicion is a less demanding standard than probable cause and requires a showing of considerably less than a preponderance of the evidence, but the Fourth Amendment to the United States Constitution requires at least a minimal level of objective justification. The officer must be able to articulate more than an "inchoate and unparticularized suspicion" or "hunch" of possible criminal activity. *Illinois v. Wardlow*, 528 U.S. 119, 123-24, 120 S. Ct. 673, 145 L. Ed. 2d 570 (2000); *Thomas*, 291 Kan. at 688.

The reviewing court does not "pigeonhole" each factor as to innocent or suspicious appearances, but instead determines

whether the totality of the circumstances justifies the detention. *State v. DeMarco*, 263 Kan. 727, 734-35, 952 P.2d 1276 (1998). The relevant inquiry is not whether particular conduct is "innocent" or "guilty," but whether a sufficient degree of suspicion attaches to particular types of noncriminal acts. *United States v. Sokolow*, 490 U.S. 1, 10, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989). The totality of the circumstances standard precludes a "divide-and-conquer analysis" under which factors that are "readily susceptible to an innocent explanation [are] entitled to 'no weight.' " *United States v. Arvizu*, 534 U.S. 266, 274, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002). In considering the totality of the circumstances, a reviewing court should employ common sense and the ordinary human experience and should accord reasonable deference to a law enforcement officer's ability to distinguish between innocent and suspicious actions. *United States v. Wood*, 106 F.3d 942, 946 (10th Cir. 1997); *Walker*, 292 Kan. 1, Syl. ¶ 6.

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated." U.S. Const. amend. IV.

A traffic violation provides an objectively valid reason for conducting a traffic stop. *Pennsylvania v. Mimms*, 434 U.S. 106, 109, 98 S. Ct. 330, 54 L. Ed. 2d 331 (1977); *State v. Moore*, 283 Kan. 344, 350, 154 P.3d 1 (2007). The parties stipulated that Coleman was speeding; therefore, the initial stop was valid.

Although Coleman was driving a rental car, the fact that a car rental agreement has expired does not deprive the driver of a reasonable expectation of privacy with respect to the contents of the car. See *United States v. Henderson*, 241 F.3d 638, 647 (9th Cir. 2000); *United States v. Cooper*, 133 F.3d 1394, 1400-02 (11th Cir. 1998).

Because parolees are subject to the control and jurisdiction of correctional authorities, they generally have a lower expectation of privacy than probationers, because parole is more like imprisonment than is probation. *Samson v. California*, 547 U.S. 843, 850, 126 S. Ct. 2193, 165 L. Ed. 2d 250 (2006). Although parolees have a diminished expectation of privacy, the historic nature of Kansas

parole conditions has led to the requirement that law enforcement officers must have a reasonable individualized suspicion of criminal activity in order to conduct a warrantless search. *United States v. Freeman*, 479 F.3d 743, 747 (10th Cir. 2007); *State v. Bennett*, 288 Kan. 86, 98, 200 P.3d 455 (2009) (adopting the *Freeman* analysis).

The question presented on appeal, then, is whether, considering the totality of the circumstances, Tatro had a reasonable suspicion that Coleman was engaging in criminal activity. The district court and the Court of Appeals found that the specific grounds for detaining Coleman for an investigative search were his status as a parolee, the expired car rental agreement, and the reports that the drug enforcement unit had "specific knowledge" that Coleman was moving cocaine from Wichita to Hutchinson.

The United States Supreme Court has determined that a search of a probationer is based on "reasonable" grounds when it is based entirely on information "provided by a police officer, whether or not on the basis of first-hand knowledge." *Griffin v. Wisconsin*, 483 U.S. 868, 879-80, 107 S. Ct. 3164, 97 L. Ed. 2d 709 (1987). The Supreme Court noted differences between the standards for probable cause and reasonable suspicion and differences between a probationer's status and the status of the citizenry in general for allowing an unauthenticated police tip to justify such a search. *Griffin*, 483 U.S. at 878-79. These same differences operate with at least as much force when distinguishing between a parolee's status and the status of other citizens. The report from the drug enforcement unit and the hearsay report of the parole officer's concerns about Coleman's travel habits may therefore in themselves have provided Tatro with a reasonable suspicion that Coleman was engaged in an illegal activity.

In addition, Coleman was driving a rental car with an expired rental agreement. Although Tatro should have attempted to verify Coleman's explanation that he had renewed the agreement by telephone, the expired agreement may have provided another legitimate basis for a temporary detention. Courts in other jurisdictions have examined this question; most have concluded that an expired rental agreement provides at least some grounds for further detention and search, while a few have reached the opposite conclu-

sion. See, *e.g., United States v. Masterson*, No. 2:08-CR-138, 2009 WL 2365334 (D. Vt. 2009) (unpublished opinion); *Burks v. State*, 362 Ark. 558, 561-62, 210 S.W.3d 62 (2005); *Tanner v. State*, 281 Ga. App. 101, 635 S.E.2d 388 (2006); *Crenshaw v. State*, 248 Ga. App. 505, 510, 546 S.E.2d 890 (2001) (fact that driver was driving a car with an expired rental agreement sufficient in itself to establish an objective reason for believing the driver may have engaged in criminal conduct, justifying detention for canine search); *State v. Kruip*, No. 07-1675, 2008 WL 2902149 (Iowa App. 2008) (unpublished opinion) (driver's peculiar travel itinerary combined with an expired car rental agreement created reasonable suspicion of criminal activity; expired agreement created reasonable suspicion that defendant was driving without consent of rental company and may have illegally converted car to her own use); *State v. Lewis*, 980 So. 2d 251, 260 (La. App. 2008); *Madden v. State*, 242 S.W.3d 504, 517 (Tex. Crim. App. 2007); *Sutton v. State*, 220 P.3d 784 (Wyo. 2009); *Garvin v. State*, 172 P.3d 725 (Wyo. 2007). But see *United States v. $93,120.00 in U.S. Currency*, No. 8:09-CV-374, 2011 WL 1002766 (D. Neb. 2011) (unpublished opinion) (expired rental car agreement, which driver said he had renewed over the phone, along with travel itinerary including travel from drug-source area to a drug-destination area, and a small amount of visible luggage combined with larger carrier on the top of vehicle and trash about the vehicle did not give police reasonable suspicion for detention and seizure); *United States v. Billups*, 442 F. Supp. 2d 697, 710-11 (D. Minn. 2006) (detention not justified despite expired rental agreement and request from rental agency that officer impound car; car not reported stolen and officer had already concluded expired agreement was not grounds for detaining driver); *Enriquez v. State*, 97 Ark. App. 62, 66-67, 244 S.W.3d 696 (2006) (arresting officer gave little weight to expired agreement at time of stop and there were no reports the car was stolen).

We have no difficulty in agreeing with the district court and the Court of Appeals that the expired rental agreement, in combination with Coleman's parolee status and the reports that it was likely that Coleman was engaged in drug transportation, provided Tatro with

a reasonable suspicion of criminal activity, justifying a temporary detention and allowing further investigation.

We must now, however, examine whether the detention was of a lawful duration.

In general, parolees have a lower expectation of privacy than probationers and other citizens, because parole is more akin to punishment than is probation. *Samson*, 547 U.S. at 850. Parole is a variation on imprisonment of convicted criminals, and the essence of parole is the release from prison before the completion of the sentence on the condition that the prisoner obey certain rules while serving the balance of the sentence. *Morrissey v. Brewer*, 408 U.S. 471, 477, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972). For that reason, parole contrasts with probation in that it is meted out in addition to incarceration, not in lieu of incarceration, and parolees enjoy even less of the average citizen's absolute liberty than do probationers. *Samson*, 547 U.S. at 850 (citing *United States v. Reyes*, 283 F.3d 446, 461 [2d Cir. 2002], and *United States v. Cardona*, 903 F.2d 60, 63 [1st Cir. 1990]). The State's "overwhelming interest" in supervising parolees justifies privacy intrusions that the Fourth Amendment to the United States Constitution otherwise would not tolerate. *Samson*, 547 U.S. at 853; see also *Griffin v. Wisconsin*, 483 U.S. 868, 875, 107 S. Ct. 3164, 97 L. Ed. 2d 709 (1987) (parolee supervision is a "special need" that allows a degree of infringement on privacy that would be unconstitutional if applied to public at large).

While the *Samson* Court found that California parole conditions allowed the police to conduct suspicionless searches of parolees, the Kansas Legislature and the Parole Board elected to place restrictions on parolee searches. Neither the State nor Coleman have presented this court with documentation setting out the terms of his parole, but it appears that Coleman was paroled in or around 2004, 3 years before the decision in *Freeman*, 479 F.3d 743. The conditions of parole and Kansas Department of Corrections' rules addressed in *Freeman* allowed a search only by *parole officers* and only on reasonable suspicion that the parolee was *in violation of the parole agreement. Freeman*, 479 F.3d at 744-45, 748. A search by ordinary law enforcement officers conducted without a reason-

able suspicion of a parole violation therefore exceeded the scope of reasonable expectations of privacy in two respects. See *Freeman*, 479 F.3d at 748.

Because, as we determined earlier, Deputy Tatro had reasonable suspicion of criminal activity that would allow him to expand the scope of his original stop, the limitation that the Kansas Department of Corrections self-imposed would not have prevented a detention for a reasonable time for a search within the scope of the initial stop. Tatro did not, however, conduct an immediate search; he instead detained Coleman for at least 35 minutes while he waited for backup officers and, eventually, a parole officer to arrive.

A traffic stop may not exceed the duration necessary to carry out the purpose of the stop. *Morlock*, 289 Kan. at 988-89. In order to justify a detention for questioning, the officer must have a reasonable suspicion that the driver is engaging in or has committed a serious crime and must have a reasonable basis for extending the duration of the detention. *State v. Mitchell*, 265 Kan. 238, 245, 960 P.2d 200 (1998). Detaining a driver for even a few minutes in order to allow a drug-sniffing dog to arrive unreasonably extends the detention when the officer did not need additional time to ask exploratory questions or to write a traffic citation. *Mitchell*, 265 Kan. 238.

In the present case, Deputy Tatro detained Coleman for the sole purpose of providing a parole officer with enough time to arrive and conduct a search under the Kansas Department of Corrections' rules. It is undisputed that Tatro did not have a written arrest and detain order, and the State does not contend that Tatro needed the extended time in order to write a ticket or to verify Coleman's license or parole status.

K.S.A. 75-5217(a) governs arrests for parole violations. The statute now allows such an arrest based on a verbal arrest and detain order issued by a parole officer. L. 2008, ch. 183, sec. 11, July 1, 2008. The version of the statute in effect when Coleman was arrested, however, allowed a parole officer to deputize a nonparole officer to carry out an arrest by

"giving such officer a written arrest and detain order setting forth that the released inmate, in the judgment of the parole officer, has violated the conditions of the

inmate's release. The written arrest and detain order delivered with the released inmate by the arresting officer to the official in charge of the institution or place to which the released inmate is brought for detention shall be sufficient warrant for detaining the inmate." K.S.A. 2007 Supp. 75-5217(a).

Addressing the earlier version of the statute, this court held in *State v. Anderson*, 281 Kan. 896, 909-10, 136 P.3d 406 (2006), that, even in the presence of probable cause, the absence of a written arrest and detain order precluded law enforcement officers from arresting a person as a conditional release violator under that earlier version of the statute.

Deputy Tatro did not have the statutory authority to arrest Coleman as a parole violator. Tatro had no grounds to arrest Coleman for any other reason prior to the parole officer conducting the search that turned up the incriminating evidence. Quite simply put, Tatro had no reasonable and legal basis for detaining Coleman while the officers waited for the parole officer to arrive at the scene. An officer may not arbitrarily detain a driver in order to procure a drug-sniffing dog, *Mitchell*, 265 Kan. 238, and an officer may not arbitrarily detain a driver in order to obtain the presence of a parole officer.

The evidence seized as a result of the unlawful arrest must be suppressed. See *Wong Sun v. United States*, 371 U.S. 471, 484, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963); *Anderson*, 281 Kan. at 912; *State v. Canaan*, 265 Kan. 835, Syl. ¶ 3, 964 P.2d 681 (1998).

Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed, and the case is remanded with directions to the district court.