NOT DESIGNATED FOR PUBLICATION

No. 112,428

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MADISON ALLEN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JOSEPH BRIBIESCA, judge. Opinion filed December 18, 2015. Affirmed.

*Heather Cessna*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., GARDNER, J., and BURGESS, S.J.

*Per Curiam*:  This case primarily asks whether law enforcement officers' seizure of persons beyond the scope of an initial traffic stop was justified by reasonable suspicion of a crime. We find it was, based on the totality of the circumstances reflected in the record.

1

*The undisputed facts*

On October 24, 2012, Officer Joseph Springob and Officer Brent Huhman were surveilling a known drug complaint house. The officers observed a black Nissan Altima leaving the residence. The officers recognized this vehicle because they had seen it previously at a couple of drug houses, including the one they were surveilling. Furthermore, on September 13, 2012, the officers had stopped this vehicle after it left the same drug house. At that time, they identified Madison Allen, the car's owner, as the driver. They found drug paraphernalia in the car and issued a notice to appear to Allen.

After the Nissan left the residence on October 24th, the officers followed it, observed that the driver failed to activate a turn signal within 100 feet of its turn, and initiated a traffic stop. Officer Springob discovered that the driver, Justin Anderson, did not have a driver's license on his person. Officer Springob took his information, returned to the patrol car to perform a records check, and requested a K9 unit. Officer Springob learned Anderson was driving while his license was revoked and Anderson had an outstanding Sedgwick County warrant for possession of certain drug precursors and paraphernalia. After receiving that information, Officer Springob returned to the vehicle and arrested Anderson.

While Officer Springob was dealing with Anderson, Officer Huhman spoke with the two passengers. Officer Huhman recognized Allen, the front seat passenger, from having stopped her in September. Officer Huhman thought Allen "appeared to be extremely nervous," as her breathing was rapid and irregular, she avoided looking at him, and she appeared to be shaking. Sandra Pingry was the passenger in the backseat. Officer Huhman did not immediately recognize her but did so after she provided her name. He knew that she owned the drug complaint house they were watching, that she had a history with narcotics, and that she was the target of a current drug complaint.

2

The officers had Allen and Pingry step out of the vehicle while they waited for the K9 unit to arrive. When it arrived, it alerted to the presence of drugs in the vehicle. When officers searched the vehicle, they discovered in the backseat a bag which contained four individually wrapped bags of marijuana along with some 9 millimeter ammunition. In the front seat, officers found a purse containing a digital scale, methamphetamine, marijuana residue, and Allen's identification.

Following the search, Allen was arrested and the car was released to Pingry, who was allowed to leave the scene. Allen was taken to the Sedgwick County Adult Detention Facility where a deputy performed a search and found in Allen's brassiere a plastic bag containing a crystalline substance. That substance tested positive for methamphetamine, and Allen was charged with one count of possession of methamphetamine.

Prior to trial, Allen filed a motion to suppress, arguing her detention resulted in an unlawful seizure. At the evidentiary hearing, Officers Springob and Huhman testified for the State and Allen testified on her own behalf. The district court denied Allen's motion, finding she had been detained 9 to 14 minutes after the traffic stop had concluded, but the officers had a reasonable suspicion of a crime at the time, so her detention was not unreasonable.

Allen waived her right to a jury trial and proceeded to a bench trial based on stipulated facts. At the bench trial, Allen contemporaneously objected to the evidence based on her motion to suppress. The district court upheld its previous ruling and ultimately found Allen guilty of possession of methamphetamine. Based on Allen's criminal history, the district court imposed a prison sentence of 12 months, suspended the sentence, and ordered Allen to serve 18 months' probation with 12 months' postrelease supervision. Allen timely appeals.

*Did the officers have reasonable suspicion of a crime?*

Allen argues that once the driver, Anderson, was arrested, the police lacked reasonable suspicion that a crime was being committed. She contends that the officers illegally extended the traffic stop in order to wait for a K9 unit, thus the subsequent search violated her constitutional protections against illegal searches and seizures.

Our standard of review of a district court's decision on a motion to suppress is bifurcated. We review the district court's factual findings to determine whether they are supported by substantial competent evidence, then review the ultimate legal conclusion de novo. In reviewing the factual findings, we do not reweigh the evidence or assess the credibility of witnesses. *State v. Reiss*, 299 Kan. 291, 296, 326 P.3d 367 (2014).

A traffic stop is a seizure under the Fourth Amendment to the United States Constitution. See *State v. Thompson*, 284 Kan. 763, 772-73, 166 P.3d 1015 (2007). A traffic infraction provides an objectively valid reason to effectuate a traffic stop, even if the stop is pretextual. When a law enforcement officer makes a traffic stop, the driver and any passengers in the car are seized within the meaning of the Fourth Amendment. *State v. Golston*, 41 Kan. App. 2d 444, 450, 203 P.3d 10 (2009), *rev. denied* 289 Kan. 1282 (2010). A traffic stop must be reasonable under the principles set forth by the United States Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)*,* and as codified by the Kansas Legislature in K.S.A. 22-2402(1). The reasonableness of the stop is measured in objective terms by examining the totality of the circumstances. See *State v. Smith,* 286 Kan. 402, 406-07, 184 P.3d 890, *cert. denied* 555 U.S. 1062 (2008).

Allen has never disputed the reasonableness of the initial stop. Because this was a routine traffic stop, Officer Springob could request a driver's license, proof of insurance, and vehicle registration; run a computer check; and issue a citation. As a general

principle, the driver must be allowed to leave without significant delay once the officer determines that the driver has a valid license and is entitled to operate the vehicle. However, an officer may make inquiries or take actions unrelated to the justification for an initial traffic stop without converting the stop into an unlawful seizure as long as the additional inquiries or actions do not measurably extend or prolong the stop. See *State v. Coleman*, 292 Kan. 813, 816-17, 257 P.3d 320 (2011).

But here, the State concedes that the officers extended the detention beyond the purpose of the initial stop by 9 to 14 minutes while waiting for the arrival of a K9 unit. Thus only if the officers had an objectively reasonable and articulable suspicion that criminal activity in addition to the traffic offense was taking place would the scope of the stop be reasonable. *Coleman*, 292 Kan. at 816-17.

In reviewing an officer's belief of a reasonable suspicion, we determine whether the totality of the circumstances justifies the detention, viewed in terms as understood by those versed in the field of law enforcement. *State v. Thomas*, 291 Kan. 676, 687, 246 P.3d 678 (2011).

"Reasonable suspicion is a less demanding standard than probable cause and requires a showing of considerably less than a preponderance of the evidence, but the Fourth Amendment to the United States Constitution requires at least a minimal level of objective justification. The officer must be able to articulate more than an 'inchoate and unparticularized suspicion' or 'hunch' of possible criminal activity. [Citations omitted.]" *Coleman*, 292 Kan. at 817.

"Both reasonable suspicion and probable cause are dependent upon the content of information possessed by the detaining authority and the information's degree of reliability. Quantity and quality are considered in the totality of the circumstances—the whole picture that must be taken into account when evaluating whether there is reasonable suspicion." *State v. DeMarco*, 263 Kan. 727, Syl. ¶ 4, 952 P.2d 1276 (1998).

5

Having reviewed the facts, we find that based on the totality of the circumstances, the officers had an objectively reasonable and articulable suspicion that criminal activity was taking place, which justified extending the scope of the car stop beyond its original purpose. The officers had observed Allen's car at two known drug houses. Approximately 1 month before this stop, these same two officers had stopped Allen when she left this same house, driving the same car, and had found her in possession of drug paraphernalia. On the night of this stop, the officers were surveilling a known drug complaint house, where they also saw Allen's car. See *Golston*, 41 Kan. App. 2d at 454 (finding a person's travels from a site known for drug-related activity as a factor supporting reasonable suspicion). They learned after stopping Allen's car that the driver had a warrant for drug violations, and they recognized the backseat passenger as having a history with narcotics, as well as being the owner of the drug complaint house. The trial court credited the officer's observation that Allen seemed to be "extremely nervous," as evidenced by her rapid and irregular breathing, her avoiding eye contact, and her shaking, and we also give it some weight. See *State v. Moore*, 283 Kan. 344, 358-59, 154 P.3d 1 (2007) (confirming extreme nervousness as a factor supporting reasonable suspicion). Thus, the district court properly denied Allen's motion to suppress the evidence.

*Did the district court violate Allen's Sixth and Fourteenth Amendment rights under* Apprendi v. New Jersey?

Allen next contends the district court violated her Sixth and Fourteenth Amendment rights as interpreted by *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Specifically, Allen argues any fact that increases the maximum penalty must be included in the charging document and proved beyond a reasonable doubt before a jury. Allen claims that the State's failure to follow these steps, and the district court's use of this information prior to enhancing her sentence, is in violation of *Apprendi*.

Allen misconstrues *Apprendi.* That case held that "[o]ther *than the fact of a prior conviction,* any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (Emphasis added.) 530 U.S. at 490. *Apprendi* approved a judge's use of prior convictions as a sentence-enhancing factor. 530 U.S. at 490.

Allen, however, concedes the Kansas Supreme Court rejected a similar argument in *State v. Ivory*, 273 Kan. 44, 41 P.3d 781 (2002), but includes this issue to preserve it for federal review. The Kansas Supreme Court has held the use of criminal history scores to determine a defendant's sentence is not unconstitutional under *Apprendi*. See *Ivory*, 273 Kan. at 46-48. Our Supreme Court recently reaffirmed *Ivory* in *State v. Baker*, 297 Kan. 482, 485, 301 P.3d 706 (2013). The Court of Appeals is duty bound to follow the Kansas Supreme Court precedent, absent some indication the court is departing from its previous position. See *State v. Belone*, 51 Kan. App. 2d 179, 211, 343 P.3d 128, *rev. denied* 302 Kan.__ (September 14, 2015). Since there is no indication our Supreme Court is departing from the *Ivory* decision, we must follow this controlling precedent.

Affirmed.