NOT DESIGNATED FOR PUBLICATION

No. 114,985

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

OSCAR C. RODRIGUEZ-MENDEZ,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; BILL L. KLAPPER, judge. Opinion filed February 10, 2017. Affirmed.

*James R. Anderson*, of Lee's Summit, Missouri, for appellant.

*Jacob G. Fishman*, assistant district attorney, *Jerome A. Gorman*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., ARNOLD-BURGER and BRUNS, JJ.

*Per Curiam*:  Oscar C. Rodriguez-Mendez appeals following his conviction of possession of cocaine. He argues the district court erred by denying his pretrial motion to suppress evidence, claiming law enforcement lacked reasonable suspicion to conduct a traffic stop. Rodriguez-Mendez also alleges the district court erred by admitting an expert's testimony and lab report into evidence at trial.

1

FACTS

On the evening of July 26, 2014, Kansas City, Kansas, Police Officers David Hopkins and Tim Fowler were on patrol when they observed a 2002 Ford Windstar van with a cracked windshield. Due to the condition of the windshield, the officers initiated a traffic stop. Officer Hopkins approached the driver's side of the van and made contact with the driver, who was identified as Rodriguez-Mendez. Officer Hopkins requested Rodriguez-Mendez' driver's license and proof of insurance. Rodriguez-Mendez handed the officer a United States employment card. Hopkins looked at the card and advised Rodriguez-Mendez that he needed his driver's license. After Rodriguez-Mendez insisted that the card was his driver's license, Hopkins asked Rodriguez-Mendez to step out of the van and then arrested him for driving without a license. Hopkins conducted a search incident to arrest and located Rodriguez-Mendez' wallet in his back left pocket. Hopkins opened the wallet and saw that Rodriguez-Mendez' driver's license was inside. Directly behind the license, Hopkins discovered a small bag of white powder, which was later identified as cocaine.

The State charged Rodriguez-Mendez with one count each of possession of cocaine and driving without a valid license. Before trial, Rodriguez-Mendez filed a motion to suppress evidence, alleging that his arrest was the result of an unreasonable search and seizure. Following a hearing, the district court denied the motion.

At trial, the State chose not to proceed on the driver's license charge, so the district court dismissed it. A jury convicted Rodriguez-Mendez of possession of cocaine. The district court sentenced him to a 12-month term of probation, with an underlying prison sentence of 11 months.

ANALYSIS

Rodriguez-Mendez raises two issues on appeal. First, he argues the district court erred by denying his motion to suppress, claiming law enforcement lacked reasonable suspicion to conduct the traffic stop. Second, he alleges the district court erred by admitting an expert's testimony and lab report into evidence at trial. We address each of these allegations in turn.

*Motion to suppress*

Rodriguez-Mendez argues the district court erred by denying his motion to suppress evidence. Specifically, he contends that law enforcement lacked reasonable suspicion to conduct the traffic stop which led to his arrest.

An appellate court reviews a district court's decision on a motion to suppress using a bifurcated standard. We review the district court's factual findings to determine whether they are supported by substantial competent evidence. In reviewing the factual findings, we do not reweigh the evidence or assess the credibility of witnesses. The district court's ultimate legal conclusion is reviewed using a de novo standard. *State v. Patterson*, 304 Kan. 272, 274, 371 P.3d 893 (2016).

Under the Fourth Amendment to the United States Constitution, a traffic stop is considered a seizure. Seizures are generally permissible if an objective law enforcement officer would have reasonable and articulable suspicion that the detainee committed, is about to commit, or is committing a crime. *State v. Johnson*, 293 Kan. 1, 5, 259 P.3d 719 (2011); see K.S.A. 22-2402(1). "The officer must be able to articulate more than an 'inchoate and unparticularized suspicion' or 'hunch' of possible criminal activity. [Citations omitted.]" *State v. Coleman*, 292 Kan. 813, 817, 257 P.3d 320 (2011). The State bears the burden of proof for a suppression motion; it must prove to the district

3

court the lawfulness of the search and seizure. K.S.A. 22-3216(2); *State v. Morlock*, 289 Kan. 980, 985, 218 P.3d 801 (2009).

A traffic infraction is an objectively valid reason to initiate a traffic stop. *State v. Moore*, 283 Kan. 344, 350, 154 P.3d 1 (2007). In this case, the State alleged that the stop was justified by a crack in the windshield of the van driven by Rodriguez-Mendez. K.S.A. 8-1741(b) provides: "No person shall drive any motor vehicle with a damaged front windshield or side or rear windows which substantially obstructs the driver's clear view of the highway or any intersecting highway."

At the suppression hearing, Officer Hopkins testified that he initiated the traffic stop due to "a pretty severe cracked windshield, which would obstruct the driver's view." During cross-examination, Hopkins stated that the windshield "appeared to be both vertically and horizontally cracked across the—pretty much the entire duration of the window vertically and at the level where you would—upon looking out the window it would obstruct the driver's view." Hopkins admitted that he did not have a photograph of the windshield and that he could not accurately draw a representation depicting the windshield crack. Although Hopkins could not recall exactly where the crack started, he stated that the windshield "was cracked across the driver's view" and that the crack was significant enough for him to notice when passing the van. Rodriguez-Mendez agreed that the windshield was damaged but denied that it obstructed the driver's view. He testified that the crack "went from the corner above the passenger down to the middle of the windshield."

The State argued that the cracked windshield provided Officer Hopkins with reasonable suspicion to stop Rodriguez-Mendez. In response, defense counsel argued there was insufficient evidence to show that Rodriguez-Mendez was substantially impaired in his ability to see through the windshield. In ruling on this issue, the district court found that the traffic stop was justified by the cracked windshield. The judge stated,

"The Court resolves the crack in the windshield in favor of the version put forward by Mr. Rodriguez-Mendez that there was a crack from the top to the bottom that had spidered out to obstruct the passenger's view. The officer was unable to either remember it—I'm not sure, he just said he couldn't adequately represent one in a drawing, so the Court finds that the only other evidence presented as to what the crack was was that presented by Mr. [Rodriguez-]Mendez.

"The statute's clear about that it has to obstruct the driver's view. Certainly in the Court's mind a cracked windshield that ran from the top corner to the bottom middle of the windshield and had a crack also horizontally across that windshield could obstruct the driver's view, so the Court finds, first of all, that Officer Hopkins had a reasonable suspicion to stop Mr. [Rodriguez-]Mendez and it wasn't simply a public safety stop. The officer could have written a citation to Mr. Rodriguez-Mendez for the cracked windshield."

Rodriguez-Mendez argues the district court's ruling was in error because Officer Hopkins could not recall or articulate specific facts about the cracked windshield sufficient to justify the stop, was unable to accurately draw a picture of the crack, and ultimately did not issue a citation for the cracked windshield.

Despite Hopkins' failure to recall or replicate the exact damage to the windshield, he testified that the damage was severe, that there were horizontal and vertical cracks that appeared to obstruct the driver's view, and that the damage was significant enough that he noticed it when passing the van. This gave Hopkins reasonable articulable suspicion to believe that the cracks substantially obstructed the driver's view. See *United States v. Callarman*, 273 F.3d 1284, 1287 (10th Cir. 2001) (traffic stop valid under K.S.A. 8-1741[b] where officer observed cracked windshield from behind car; irrelevant whether crack was actually large enough to constitute a violation of the law); *United States v. Duque-Nava*, 315 F. Supp. 2d 1144, 1151 (D. Kan. 2004) (traffic stop valid under K.S.A. 8-1741[b] where windshield crack was of sufficient size and placement to give officer reasonable articulable suspicion to believe it substantially obstructed driver's view).

The district court's finding that the windshield was sufficiently cracked as to substantially obstruct the driver's view is supported by substantial competent evidence. As a result, the court properly concluded that the traffic stop was justified. The district court did not err in denying Rodriguez-Mendez' motion to suppress evidence on this basis.

*Expert testimony and evidence*

Rodriguez-Mendez argues the district court erred by admitting an expert's testimony and lab report into evidence, which established that the white powdery substance discovered in his wallet was cocaine. Specifically, he claims the State failed to satisfy the required standards for expert witness testimony or evidence set forth under *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), or *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). The State responds that Rodriguez-Mendez' failure to contemporaneously object to the admission of this evidence at trial precludes us from reaching the merits of his argument.

At trial, the State offered the testimony of DC Broil, the director of the forensic laboratory at the Kansas City, Kansas Community College. Broil has bachelor's degrees in chemistry and biology, a graduate degree in criminalistics, and a master's degree in curriculum and education with an emphasis in secondary science. Broil testified that as the forensic laboratory director, she was responsible for the identification, testing, and report writing of narcotics evidence from the Kansas City, Kansas, Police Department. Broil stated that the laboratory was licensed through the Drug Enforcement Administration (DEA) and the Kansas Bureau of Pharmacy to purchase and do forensic analysis on schedule 1, 2, and 3 drugs for testing and teaching purposes. According to Broil, the laboratory had been licensed and in good standing since its inception in 2001 and the license was renewed yearly. Broil had testified as an expert 53 times since she began working at the laboratory in 2011. With respect to the present case, Broil said she

6

tested the white powdery substance identified in State's Exhibit 1, explaining that she used a gas chromatography mass spectroscopy to identify the presence of cocaine in the substance. Broil then identified State's Exhibit 2 as the lab report she prepared after determining that State's Exhibit 1 contained cocaine. The State moved to admit the lab report into evidence, but defense counsel stated that she would "like to reserve making a comment about that until I've cross-examined this witness."

On cross-examination, defense counsel elicited testimony from Broil that the DEA licensing procedure involved an initial application process in 2001 and a yearly application renewal and fee payment thereafter; that the DEA, the Kansas Bureau of Investigation, and the Kansas Bureau of Pharmacy had never performed an on-site inspection during Broil's time working at the laboratory; and that no one double-checked Broil's work because she was the only chemist in the laboratory.

Following Broil's testimony, the State rested its case without any further discussion regarding the lab report. Outside the presence of the jury, the parties discussed several matters; the district court denied defense counsel's motion for a directed verdict, dismissed the driver's license charge, and verified that Rodriguez-Mendez did not want to testify. At this point, defense counsel noted Broil's lab report had not been admitted into evidence. When the prosecutor requested the report be introduced into evidence, defense counsel objected on grounds that the State already had rested its case and that the report lacked legitimacy and accuracy given the laboratory's application process, the lack of any on-site inspection or oversight, and the State's failure to prove the accuracy of the machine used to test the substance in this case. In response, the prosecutor asserted Rodriguez-Mendez should have challenged Broil's qualifications or the scientific methods she used in a pretrial motion or during Broil's testimony, rather than waiting until the State rested its case. The prosecutor maintained Broil's testimony regarding her qualifications, training, and the testing she performed were sufficient to establish that the lab report was admissible. After hearing from both sides, the district court overruled

7

defense counsel's objection and permitted the State to introduce the lab report into evidence, ruling that the method of testing performed by Broil was both scientifically sound and reliable.

Rodriguez-Mendez contends the district court erred in admitting both Broil's testimony and lab report into evidence. But, as the State points out, Rodriguez-Mendez did not object at any point during Broil's testimony. To preserve an issue relating to the admissibility of evidence for appeal, a party must make a timely and specific objection. K.S.A. 60-404; see *State v. Gaona*, 293 Kan. 930, 955-56, 270 P.3d 1165 (2012) (failure to make timely and specific objection pursuant to K.S.A. 60-404 bars evidentiary review on appeal); *State v. King*, 288 Kan. 333, 349, 204 P.3d 585 (2009) ("[P]ractice of reviewing evidentiary questions when no objection has been lodged runs contrary to the legislature's clearly stated intent in K.S.A. 60-404."). Because Rodriguez-Mendez failed to make a timely objection to Broil's testimony, appellate review of his challenge to the admission of her testimony is foreclosed under the contemporaneous objection rule set forth in K.S.A. 60-404.

Additionally, we question whether Rodriguez-Mendez properly preserved his objection to the admission of the lab report. First, the lab report is not included in the record on appeal. The party claiming an error occurred has the burden of designating a record that affirmatively shows prejudicial error. Without such a record, an appellate court presumes the action of the trial court was proper. See *State v. Sisson*, 302 Kan. 123, 128, 351 P.3d 1235 (2015). Second, Rodriguez-Mendez did not timely object to the admission of the report. After the State requested the admission of the lab report, defense counsel asked to reserve comment on the report until after she had cross-examined Broil. When defense counsel completed her cross-examination, she did not revisit the issue prior to the State resting its case. Only later, after the State rested its case and the parties discussed several other matters, did defense counsel object to the lab report's admission. Under these circumstances, defense counsel arguably failed to timely object to the

admission of the report. See K.S.A. 60-404; see *State v. Dupree*, 304 Kan. 43, 62-63, 371 P.3d 862 (objections to evidence at next recess not sufficient), *cert. denied* 137 S. Ct. 310 (2016).

At the end of the day, however, even if the district court erred by admitting the lab report into evidence, the erroneous admission of evidence is subject to the harmless error standard:

> "Unless justice requires otherwise, no error in admitting or excluding evidence, or any other error by the court or a party, is ground for granting a new trial, for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." K.S.A. 2015 Supp. 60-261.

Broil testified, without objection, as to the contents of the lab report. Consequently, the admission of the lab report itself was harmless because it could not have prejudiced Rodriguez-Mendez or affected his substantial rights in any way.

Affirmed.