NOT DESIGNATED FOR PUBLICATION

No. 116,492

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ABIGAIL KRISTINE BROWN,
*Appellant*.


MEMORANDUM OPINION

Appeal from Saline District Court; PATRICK H. THOMPSON, judge. Opinion filed December 15, 2017. Affirmed.

*Heather Cessna*, of Kansas Appellate Defender Office, for appellant.

*Amy E. Norton*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., MALONE, J., and MERLIN G. WHEELER, District Judge, assigned.

PER CURIAM: Abigail Brown (Abigail) appeals her convictions of three counts of possession of a controlled substance and one count of possession of drug paraphernalia. Abigail claims the district court erred when it denied her motion to suppress the evidence. Abigail argues that while she and her sister were stopped for speeding, Deputy Craig Norris measurably extended the duration of the traffic stop without reasonable suspicion when he and his K-9 performed an exterior sniff search of their rental car. The district court denied Abigail's motion to suppress, finding that Norris diligently investigated the traffic stop and did not measurably extend the duration of the stop in order to perform the K-9 sniff search. Finding no error, we affirm the district court's judgment.

1

FACTUAL AND PROCEDURAL BACKGROUND

On November 20, 2015, Norris, a deputy for the Saline County Sheriff's Office, was on duty by himself with his drug K-9 on Interstate 70, where the posted speed limit was 75 miles per hour. Soon after midnight, Norris clocked a car traveling 87 miles per hour, and he proceeded to pull the car over. Alexandra Brown (Alexandra) was driving the car, and her sister, Abigail, was a passenger.

While approaching the car from the passenger side, Norris observed that the car had multiple air fresheners hanging from the rearview mirror. He also observed that the car had a "lived-in" appearance, meaning that the car contained lots of trash in the form of empty drinks and empty bags of food. Norris asked the women where they were going, and they indicated they had been driving for about 15 hours from Ohio where they had traveled to see their father. Norris discovered that the car was a rental car, and the Browns provided Norris with the rental agreement. Alexandra told Norris that her grandmother had rented the car for them because they did not have credit cards. While reviewing the rental agreement, Norris noticed that the rental car was past due.

Norris asked the Browns for their drivers' licenses, which they provided him. Norris took the drivers' licenses and the rental agreement back to his vehicle for further investigation. When Norris got back to his vehicle, he requested that Deputy Jay Martin come to their location. Norris requested backup so that Martin could complete the speeding citation while Norris performed an exterior sniff search with his K-9.

When Martin arrived, Norris had just begun typing the digiticket. After Norris briefly informed Martin of the situation, Martin began completing the citation in Norris' vehicle. Norris asked the Browns to exit the car so his K-9 could perform the sniff search. Following some resistance from Alexandra, the Browns exited their vehicle. Norris and

2

his K-9 then conducted the exterior sniff search of the rental car, and the K-9 alerted in front of the passenger side door.

Based on the K-9's alert, Norris searched the car. In two bags inside the car, Norris found marijuana, a glass pipe, a metal pipe, and prescription medication: dextroamphetamine and oxycodone, which were not prescribed to Alexandra or Abigail. Norris' body camera recorded his entire encounter with the Browns. Martin's body camera also recorded his involvement with the traffic stop. For simplicity, we will summarize the timeline of events in accordance with Norris' and Martin's body cameras:

- At 12:09, Norris approached the Browns' rental car.
- At 12:11, Norris obtained the Browns' drivers' licenses and rental agreement.
- At 12:12, Norris returned to his vehicle and began reviewing the rental agreement.
- At 12:13, Norris radioed Martin for backup.
- At 12:14, Norris radioed dispatch to run a status and warrants check on Alexandra.
- At 12:15, Norris completed his relay of Alexandra's information to dispatch.
- At 12:17, dispatch radioed its findings on Alexandra to Norris.
- Between 12:15 and 12:17, while corresponding with dispatch, Norris reviewed the rental agreement and the drivers' licenses.
- At 12:18, Norris radioed dispatch to run a status and warrants check on Abigail.
- At 12:19, dispatch radioed its findings on Abigail to Norris; she had no outstanding warrants.

- At 12:20, Martin arrived on the scene and Norris can be heard typing out the citation.
- From 12:20 to 12:21, Norris informed Martin of the situation and instructed him to complete the citation.
- At 12:21, Norris instructed the Browns to exit the car so he could perform an exterior sniff search.
- At 12:22, Norris got his dog out of his vehicle.
- At 12:23, the dog alerted at the passenger side door, indicating that contraband was in the car.
- At 12:24, the dog sniff was complete.

Based on these events, the State charged Abigail with three counts of unlawful possession of a controlled substance and one count of possession of drug use paraphernalia. Abigail subsequently filed a motion to suppress the evidence. In the motion, Abigail argued, among other things, that Norris unnecessarily prolonged the stop without reasonable suspicion of any crime other than the speeding violation.

On February 11, 2016, the district court held a hearing on Abigail's motion to suppress. Both Norris and Martin testified at the hearing, and a DVD of the stop was admitted into evidence. In addition to the above facts, Norris testified that normally it takes approximately 15 minutes from the time of an initial traffic stop to the time required to complete a citation. That estimation was based on Norris writing between 250 to 300 citations and warnings a year and also on Norris having worked with his department's computerized citation format for three years.

After hearing the evidence, the district court made detailed factual findings about the law enforcement investigation and the duration of the traffic stop. The district court found that the entire traffic stop, from the time the stop was initiated until the dog sniff

4

search was completed, occurred within 15 minutes. From these findings, the district court concluded that Norris diligently pursued his investigation and did not purposely prolong the stop. The district court also concluded that Norris did not measurably extend the duration of the traffic stop in order to perform the K-9 sniff search. Accordingly, the district court denied the motion to suppress.

On April 11, 2016, the case proceeded to a bench trial on stipulated facts. Based on the stipulated evidence, the district court found Abigail guilty on all counts. On June 27, 2016, the district court imposed a controlling sentence of 11 months' imprisonment and placed Abigail on probation for 12 months. Abigail timely appealed her convictions.

ANALYSIS

On appeal, Abigail claims the district court erred when it denied her motion to suppress the evidence. Abigail argues that Norris measurably extended the duration of her traffic stop longer than normally required for the issuance of a citation. She argues that Norris purposely delayed his execution of the citation while waiting for backup, so he could take his drug-sniffing K-9 around the car. This way, Abigail asserts, Norris made it appear as though the traffic stop was not extended beyond the issuance of her citation. In addition, Abigail contends that Norris did not gain a reasonable suspicion of criminal activity to extend the scope of the stop. Abigail does not contest the legitimacy of the K-9's alert or the legality of the actual search of the rental car.

The State argues that Norris did not delay the traffic stop beyond the normal time required to issue a citation. The State contends that when considering the totality of the circumstances, Norris did not measurably extend the duration of the stop in order to perform the K-9 sniff search. The State also argues that Norris had reasonable suspicion of criminal activity to extend the scope of the stop beyond the issuance of a citation.

5

An appellate court applies a bifurcated standard of review of a district court's decision on a motion to suppress. The appellate court reviews the district court's factual findings to determine whether they are supported by substantial competent evidence. *State v. Patterson*, 304 Kan. 272, 274, 371 P.3d 893 (2016). The district court's ultimate legal conclusion is reviewed using a de novo standard. 304 Kan. at 274. When the material facts to the district court's decision on a motion to suppress evidence are not in dispute, the question of whether to suppress is a question of law over which an appellate court has unlimited review. *State v. Cleverly*, 305 Kan. 598, 604, 385 P.3d 512 (2016).

The Fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures. *State v. Sharp*, 305 Kan. 1076, 1081, 390 P.3d 542 (2017). A traffic stop is considered a seizure of the driver of the vehicle. *City of Atwood v. Pianalto*, 301 Kan. 1008, 1011, 350 P.3d 1048 (2015). To legally perform a traffic stop, or to legally perform any stop in a public place for investigatory purposes, a law enforcement officer must have a reasonable suspicion, requiring specific and articulable facts, that the driver committed or is about to commit a crime or traffic infraction. See K.S.A. 22-2402(1). A traffic infraction is an objectively valid reason to effectuate a traffic stop. *State v. Jones*, 300 Kan. 630, 637, 333 P.3d 886 (2014).

Abigail concedes that the car stop was proper based on Alexandra's speeding infraction. Once a driver is legally stopped, a law enforcement officer may properly request additional information from the driver, including a driver's license, proof of insurance, and vehicle registration. Additionally, officers may run a computer check and issue a citation. *State v. Coleman*, 292 Kan. 813, 816, 257 P.3d 320 (2011) (citing *United States v. Elliott*, 107 F.3d 810, 813 [10th Cir. 1997]). Law enforcement officers may also run warrant checks on passengers using their drivers' licenses provided that the duration of the stop is not measurably extended. See *State v. Currie*, No. 102,501, 2010 WL 1379696, at *5 (Kan. App. 2010) (unpublished opinion); see also *Arizona v. Johnson*, 555 U.S. 323, 333, 129 S. Ct. 781, 172 L. Ed. 2d 694 (2009).

6

After an officer has determined that a license is valid and the driver is entitled to operate the vehicle, the officer must permit the driver to leave without further delay. *Coleman*, 292 Kan. at 816. However, "[a]n officer's inquiries or actions unrelated to the justification for an initial traffic stop do not convert the stop into an unlawful seizure so long as they do not measurably extend or prolong the stop." *Coleman*, 292 Kan. at 816 (citing *State v. Morlock*, 289 Kan. 980, 986-89, 218 P.3d 801 [2009]). Law enforcement officers do not need reasonable suspicion to conduct a K-9 sniff search of a vehicle's exterior as long as the sniff search does not measurably extend a stop beyond the reasons for the initial stop. See *Illinois v. Caballes*, 543 U.S. 405, 407-09, 125 S. Ct. 834, 160 L. Ed. 2d 842 (2005). Finally, although law enforcement officers typically use the term "K-9 sniff search," a drug dog's sniff of the exterior of a vehicle is not a "search" for purposes of the Fourth Amendment. *State v. Barker*, 252 Kan. 949, 957, 850 P.2d 885 (1993).

Here, there are three possible questions that we must answer to address Abigail's claim on appeal. First, did Norris measurably extend the duration of the traffic stop in order to conduct a K-9 sniff search of the vehicle? If not, did Norris purposely delay completing the citation so that a sniff search could be performed without it appearing that the stop was measurably extended? Finally, only if we answer yes to one of the first two questions, did Norris have reasonable suspicion of additional criminal activity to extend the stop beyond the scope of a traffic citation? We will answer each question in turn.

*Did Norris measurably extend the duration of the traffic stop?*

Norris did not measurably extend the duration of the traffic stop beyond its normal time limits. At the hearing, Norris testified that it takes approximately 15 minutes from the time of an initial stop to the time required to complete a citation. That estimation was based on Norris' experience writing between 250 to 300 citations and warnings a year and also on Norris having worked with his department's computerized citation format for

7

three years. The video evidence, which was admitted without objection, corroborates Norris' testimony that the K-9 alerted for drugs within 15 minutes of the stop.

The district court's factual findings that Norris did not measurably extend the duration of the traffic stop to perform the K-9 sniff search were supported by substantial competent evidence. We also agree with the district court's legal conclusion that Norris did not need reasonable suspicion to conduct a K-9 sniff search of the vehicle's exterior because the sniff search did not measurably extend the duration of the initial traffic stop. See *Caballes*, 543 U.S. at 407-09.

*Did Norris purposely delay completing the citation so he could perform the search?*

Perhaps realizing that Norris completed the K-9 sniff search within the normal duration of a traffic stop, Abigail also argues that Norris purposely delayed completing the citation to make it appear that he did not measurably extend the stop. In partial support of her argument, Abigail asserts there was a two to three minute delay from when Martin arrived to when he began completing the citation.

To address a claim such as this one, "courts examine 'whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.'" *State v. Smith*, 286 Kan. 402, 410, 184 P.3d 890 (2008) (quoting *United States v. Sharpe*, 470 U.S. 675, 686, 105 S. Ct. 1568, 84 L. Ed. 2d 605 [1985]). These matters are questions of fact; thus, we must decide if the district court's factual findings are supported by substantial competent evidence. See *State v. Wendler*, 47 Kan. App. 2d 182, 190, 274 P.3d 30 (2012).

The district court first found that Norris obtained the Browns' information in a reasonable amount of time. The district court found that Norris returned to his car and began diligently reviewing the information, calling the information into dispatch after his

8

initial review. As soon as he heard back from dispatch, Norris immediately began typing the citation. The district court noted that it heard Norris typing the citation from his body camera from the time he spoke to dispatch until Martin arrived. After Martin arrived, the district court found that Martin began diligently working on the citation while Norris' K-9 performed an exterior sniff search of the rental car. Finally, the district court determined that all of these activities occurred within 15 minutes of the initial car stop. From these findings, the district court concluded that Norris diligently pursued his investigation and that Norris did not purposely prolong the stop.

We again find that the district court's factual findings were based on substantial competent evidence. Norris' body camera video, which was admitted into evidence at the hearing without objection, corroborates all of the district courts findings. Furthermore, Martin testified that after arriving at the scene and having Norris briefly inform him of the situation, he began completing the citation. The video evidence also corroborates Martin's testimony. We further note that Norris' and Martin's body camera clocks were not completely synchronized; Martin's camera was three minutes faster than Norris' camera. This discrepancy likely explains why Abigail argues there was a two to three minute delay from when Martin arrived to when he began completing the citation.

Abigail cites *Wendler* to support her argument that Norris purposely delayed completing the traffic investigation so that he could perform his K-9 sniff. In that case, an officer stopped a vehicle for a traffic infraction. Forty-six minutes after the initial stop, the officer found drugs in the vehicle. At the hearing on the motion to suppress, the officer testified that he had completed his investigation relating to the initial traffic stop nine minutes into the stop. The district court found that the officer did not pursue any investigation whatsoever for extended periods of time and that the officer purposely prolonged the traffic stop beyond its necessary scope. Thus, the district court ruled that the officer violated the defendant's Fourth Amendment rights and suppressed the evidence. On appeal, this court determined that the district court's findings were

9

supported by substantial competent evidence and affirmed the district court's judgment. 47 Kan. App. 2d at 192, 200.

The facts in *Wendler* are clearly distinguishable from the facts herein. First, Norris detained Abigail for a total of 15 minutes before finding drugs, while in *Wendler*, the officer detained the defendant for 46 minutes before finding drugs. Second, unlike the officer in *Wendler*, Norris never had any prolonged periods of inactivity during his investigation. As the district court found, and as Norris' body camera corroborates, Norris diligently pursued his investigation from the initial stop to the finding of drugs.

To sum up, Norris did not measurably extend the duration of the traffic stop in order to conduct an exterior K-9 sniff search of Abigail's vehicle. Norris diligently pursued his investigation and did not purposely prolong the traffic stop so that he could conduct his search. Because Norris conducted the K-9 sniff search and located the contraband without measurably extending the duration of the initial traffic stop, we do not need to address whether he had reasonable suspicion of additional criminal activity to extend the scope of the stop. Finally, Abigail does not contest the legitimacy of the K-9's alert or the legality of the actual search of the rental car. For these reasons, we conclude the district court did not err in denying Abigail's motion to suppress the evidence.

Affirmed.