No. 90,404

LARRY WILSON and the DEMOCRATIC PARTY OF SHAWNEE COUNTY, KANSAS, *Petitioners*, v. KATHLEEN SEBELIUS, GOVERNOR, CHEARIE DONALDSON, and the REPUBLICAN PARTY OF SHAWNEE COUNTY, KANSAS, *Respondents*.

(72 P.3d 553)

Opinion filed July 11, 2003.

*Gregory M. Garvin*, of Sader & Garvin, LLC, of Overland Park, argued the cause, and *Patrick J. Hurley* and *Neil S. Sader* were on the brief for petitioners.

*Natalie G. Haag*, of Fisher, Cavanaugh, Smith & Lemon, P.A., of Topeka, argued the cause and was on the brief for respondents Chearie Donaldson and the Republican party of Shawnee County.

*Wm. Scott Hesse*, assistant attorney general, was on the brief for intervener Phill Kline, attorney general.

The opinion of the court was delivered by

ALLEGRUCCI, J.: This is an original action in mandamus and quo warranto brought by petitioners Larry Wilson and the Democratic party of Shawnee County challenging the constitutionality of the statutory scheme set out in K.S.A. 2002 Supp. 19-504, 25-3902, and 25-3903 for filling vacancies in offices, in particular, a vacancy in the office of the Shawnee County treasurer that was created by the resignation of Rita Cline. Respondents are Governor Kathleen Sebelius, Chearie Donaldson, and the Republican party of Shawnee County. The attorney general intervened for the purpose of defending the constitutionality of the statutes. In the alternative, petitioners seek an interpretation of the statutes that would allow the Democratic party of Shawnee County to elect Cline's successor.

The facts are undisputed. On November 7, 2000, Rita Cline was elected Shawnee County treasurer. On the general election ballot, Cline was identified as the candidate of the Democratic party. She was unopposed in the general election.

On February 26, 2001, Cline changed her party affiliation to the Republican party. When Cline resigned from her office as Shawnee County treasurer, effective March 10, 2003, she was a registered Republican.

The Shawnee County Democratic party elected Larry Wilson to be appointed to fill the vacant Shawnee County treasurer's position and certified the election to Governor Kathleen Sebelius on March 18, 2003. The Shawnee County Republican party elected Chearie Donaldson to be appointed to fill the vacant Shawnee County treasurer's position and certified the election to Governor Kathleen Sebelius on March 18, 2003.

With the agreement of the parties, the court issued an order temporarily restraining Governor Sebelius from appointing any in-

dividual certified by a district convention of either party to the position of Shawnee County treasurer.

The procedure provided by the legislature for filling a vacancy in the office of county treasurer, set out in K.S.A. 19-504, 25-3902, and 25-3903, is for the governor to appoint the person selected by a district convention of the political party of the outgoing official. The governor is not given the opportunity to choose from several nominees and has no discretion to reject the district convention's single selection.

K.S.A. 2002 Supp. 19-504 provides: "In case the office of county treasurer shall become vacant, there shall be appointed a successor to perform the duties of such treasurer . . . . Appointments hereunder shall be made in the manner provided by law for filling vacancies in the office of member of the house of representatives." K.S.A. 25-3903 provides that "[w]henever a vacancy occurs in the office of state representative . . . such vacancy shall be filled by appointment by the governor of the person elected to be so appointed by a district convention held as provided in K.S.A. 25-3902." K.S.A. 25-3902(a) provides in part:

"[W]hen a district convention is provided by law to be held to elect a person to be appointed to fill a vacancy in a district office, the county chairperson designated in subsection (b) . . . , within 21 days of receipt of notice that a vacancy has occurred or will occur, shall call and convene a convention of all committeemen and committeewomen *of the party* of the precincts in such district for the purpose of electing a person to be appointed by the governor to fill the vacancy." (Emphasis added.)

K.S.A. 25-3901(b) defines "party" as "a political party having a state and national organization and of which the officer or candidate whose position has become vacant was a member."

Because Cline was affiliated with the Democratic party in November 2000 when she was elected Shawnee County treasurer, the Shawnee County Democratic party determined that it was entitled to elect a person to be appointed to fill the vacancy. The Shawnee County Democratic party elected Larry Wilson and certified its choice to Governor Sebelius on March 18, 2003.

Because Cline was affiliated with the Republican party in March 2003 when she resigned from office as Shawnee County treasurer,

the Shawnee County Republican party determined that it was entitled to elect a person to be appointed to fill the vacancy. The Shawnee County Republican party elected Chearie Donaldson and certified its choice to Governor Sebelius on March 18, 2003.

The parties stipulate that it is appropriate for this court to exercise original jurisdiction in this matter. Article 3, § 3 of the Kansas Constitution grants original jurisdiction in proceedings in quo warranto and mandamus to this court. An original action in quo warranto is an appropriate procedure for questioning the constitutionality of a statute. *State ex rel. Stephan v. Martin*, 230 Kan. 747, 748, 641 P.2d 1011 (1982). Petitioners challenge the constitutionality of the statutory scheme for filling vacancies in offices. An original action in mandamus is an appropriate procedure for compelling an official to perform some action. *Wichita Eagle & Beacon Publishing Co. v. Simmons*, 274 Kan. 194, 50 P.3d 66, 77 (2002). Petitioners request the court, if it determines the statutes to be unconstitutional, to direct the Governor to appoint a treasurer for Shawnee County pursuant to K.S.A. 25-312. Petitioners request the court, if it determines the statutes to be constitutional, to direct the Governor to appoint Larry Wilson as treasurer for Shawnee County. In *State ex rel. Stephan v. Finney*, 251 Kan. 559, 836 P.2d 1169 (1992), we said:

" 'Numerous prior decisions have recognized mandamus is a proper remedy where the essential purpose of the proceeding is to obtain an authoritative interpretation of the law for the guidance of public officials in their administration of the public business, notwithstanding the fact that there also exists an adequate remedy at law. 231 Kan. 20, Syl. ¶ 4; *Mobil Oil Corporation v. McHenry*, 200 Kan. 211, 239, 436 P.2d 982 (1968), and cases cited therein. . . .

. . . .

" 'Relief in the nature of quo warranto and mandamus is discretionary. *State ex rel. Stephan v. Carlin*, 229 Kan. [665, 666, 630 P.2d 709 (1981)]. This court may properly entertain this action in quo warranto and mandamus if it decides the issue is of sufficient public concern.' " 251 Kan. at 567 (quoting *State ex rel. Stephan v. Kansas House of Representatives*, 236 Kan. 45, 52-53, 687 P.2d 622 [1984])."

The petitioners assert that this matter is of sufficient public concern, stating:

"As for public concern, the legitimacy of the power and appointment of those holding public office is of the highest public concern as it would affect virtually every public office in the State. Already, since the last election, this issue is now ripe in two counties. The Governor has already filed an action in Woodson County to have these issues determined resulting from the vacancy in the office of the Woodson County sheriff. Like the Shawnee County treasurer, the sheriff of Woodson County switched parties after being elected.

"While the constitutionality and interpretation of the current appointment scheme is in doubt, the appointment process will be in a perpetual state of limbo and will impair the ability of executive offices to act. Currently, there is no sheriff of Woodson County. There is no current Shawnee County treasurer. If this issue is not now decided by this Court, these issues will eventually come before the Court, but only after a nine to sixteen month delay, depending on all trial and appellate circumstances. In the meantime, an executive vacuum will ensue. The vacancies to these public offices will remain open and new litigation will ensue possibly every time a new vacancy arises. The very purpose of the appointment process was to provide a quick and efficient means to fill vacancies in public offices until the next available election. This legislative purpose will be thwarted until resolution of these issues."

We agree that mandamus and quo warranto are appropriate and proper means for resolving this matter.

In the present case, Petitioners have posed two questions—both the interpretation and the constitutionality of the statutory scheme set out in K.S.A. 2002 Supp. 19-504, 25-3902, and 25-3903. Appellate courts generally avoid making unnecessary constitutional decisions. Thus, where there is a valid alternative ground for relief, an appellate court need not reach constitutional challenges to statutes. *State v. Donham*, 29 Kan. App. 2d 78, 91, 24 P.3d 750, *rev. denied* 272 Kan. 1421 (2001) (citing *Rust v. Sullivan*, 500 U.S. 173, 207, 114 L. Ed. 2d 219, 111 S. Ct. 1759 [1991] [Blackman, J., dissenting]); *International Ass'n of Machinists v. Street*, 367 U.S. 740, 749, 6 L. Ed. 2d 1141, 81 S. Ct. 1784 (1961). This court declined to reach the constitutional question in circumstances very like those of the present case, in an original action in mandamus. *Rogers v. Shanahan*, 221 Kan. 221, 565 P.2d 1384 (1976). Rogers was the senator-elect for the state's 21st senatorial district, and the incumbent senator contested the election. Shanahan, the secretary of state, interpreted K.S.A. 1975 Supp. 46-143 in light of the contest as making Rogers ineligible to attend the preorganizational

meeting of the senate. Rogers sought to compel Shanahan to read his name at the preorganizational meeting among the roll of members-elect to the Kansas Senate, and he challenged the constitutionality of the statute as his ground for an order of mandamus. The court declined to reach the constitutional issue:

"Both petitioner and respondent read K.S.A. 1975 Supp. 46-143 as making petitioner ineligible to attend the preorganizational meeting provided for in K.S.A. 1975 Supp. 46-142 because his election has been contested. Petitioner contends the statute is therefore void because it denies him certain constitutionally guaranteed rights. Respondent argues no constitutional rights are involved or violated. From our reading of the statute, we find it unnecessary to reach the constitutional questions raised. We believe neither of the parties has correctly interpreted K.S.A. 1975 Supp. 46-143." 221 Kan. at 223.

Here, a decision in petitioners' favor on the interpretation of the statute would eliminate the necessity for the court to reach the constitutional question. Additionally, respondents and intervener, who defend the constitutionality of the statutory scheme, are not in a position to object to the court's not reaching the constitutional issue. Thus, we will first determine the correct interpretation of the statutes in question.

K.S.A. 25-3902(a) states in part:

"[W]hen a district convention is provided by law to be held to elect a person to be appointed to fill a vacancy in a district office, the county chairperson designated in subsection (b) . . . , within 21 days of receipt of notice that a vacancy has occurred or will occur, shall call and convene a convention of all committeemen and committeewomen *of the party* of the precincts in such district for the purpose of electing a person to be appointed by the governor to fill the vacancy." (Emphasis added.)

Interpretation of a statute is a question of law, and it is a function of this court to interpret statutory language to give it the effect intended by the legislature. In fact, it is the fundamental rule of statutory construction, to which all others are subordinate, that the intent of the legislature governs. *KPERS. v. Reimer & Koger Assocs., Inc.*, 261 Kan. 17, 25-26, 927 P.2d 466 (1996).

Petitioners' position is that the legislature intended to set out a procedure that would support the mandate of the election preceding the vacancy. In support of their position, Petitioners cite the

following cases: *Baker v. Martin*, 330 N.C. 331, 410 S.E.2d 887, 893 (1991); *Rodriguez v. Popular Democratic Party*, 457 U.S. 1, 13, 72 L. Ed. 2d 628, 102 S. Ct. 2194 (1982); and *Richards v. Board of County Commissioners*, 6 P.3d 1251, 1253 (Wyo. 2000).

In *Baker*, the North Carolina Supreme Court rejected a challenge under the state constitution to a state statute that required candidates to fill unexpired terms of district court judges to be members of the same political party as the vacating judge. With regard to the legislative intent, the court stated: "The General Assembly in this case has chosen to protect the mandate of the previous election by providing that the appointed judge should be of the same political party as his or her predecessor." 330 N.C. at 341. The North Carolina court cited *Rodriguez* as "illustrat[ing] that the protection of the mandate of an election is a legitimate concern." 330 N.C. at 341.

In *Rodriguez*, as we have seen, the United States Supreme Court upheld the constitutionality of a Puerto Rico statute that authorized a political party to appoint a replacement when one of its members vacates a position as a district legislator. On the question whether giving the appointment to a political party rendered the statute unconstitutional, the Supreme Court approved the Puerto Rico Supreme Court's holding "that party appointment was a legitimate mechanism serving to protect the mandate of the preceding election and to preserve the 'legislative balance' until the next general election is held." 457 U.S. at 13.

In *Richards*, the issue decided by the Supreme Court of Wyoming is the same question that is before this court. The Wyoming court answered "no" to the following certified question: "When a County Commissioner changes his political affiliation during his term in office and subsequently resigns, does the statutory language 'the political party to which the member whose office is vacant belonged,' as stated in [Wyo. Stat. Ann.] § 18-3-524(a), mean the political party to which the member belonged at the time of the vacancy's occurrence?" 6 P.3d at 1252. The statute in question provided that notice of a vacancy in the office of any county commissioner must be given "to the chairman of the county central committee of the political party to which the member whose office

is vacant belonged." 6 P.3d at 1253 (quoting Wyo. Stat. Ann. § 18-3-524[a] [2001]). Because the statute does not address or anticipate a county commissioner's changing his party affiliation during a term in office, the Wyoming court determined that the statute was ambiguous and resorted " 'to general principles of statutory construction in the effort to ascertain legislative intent.' [Citation omitted.]" 6 P.3d at 1253. The Wyoming court reasoned:

"[W]hen looking 'to the mischief the act was intended to cure,' we find it more reasonable that, when the legislature fails to provide for a certain situation, the legislature enacts the law assuming the situation that occurs in the majority of instances. Changing party affiliation after being elected is a relatively rare and infrequent occurrence. Therefore, in the majority of instances, a county commissioner leaving office is still affiliated with the political party which supported him in the last election.

"In addition, we acknowledge that a county commissioner with a major party affiliation is often supported, financially and otherwise, by the political party he has pledged his allegiance to in preparation for his election bid. It would be contrary to public policy to allow an individual to frustrate the assumption of the political party which supported him that a person from that political party would hold that office until the next election. Therefore, considering the 'public policy of the state,' we hold that the statute calls for the board of county commissioners to notify the central committee of the party to which the former member belonged at the time of the last election." 6 P.3d at 1253.

Respondents contend that *Richards* is not controlling in this matter because the Wyoming court did not consider the question of the right of association. The freedom of association argument made by respondents is that public officials can switch party affiliations because their rights of political association are protected by the First and Fourteenth Amendments of the federal constitution. A public official's freedom to switch party affiliation, however, is not at issue in the present case. Carrying the argument further and using the example of United States Senator James Jeffords, whose "seat" did not remain a Republican seat when he switched his affiliation from Republican to Independent, respondents would have the court conclude that it is an individual rather than a party that is replaced when an elected office is vacant. The example, because it is a person who remained in office after switching party affiliation, is immaterial to the present question of construction of

the statute governing filling vacancies in offices. The conclusion—individuals rather than parties are elected—that respondents urge is a bromide rather than an aid in interpreting the statute. Moreover, if the official who resigned is treated strictly as an individual, there would be no more reason for respondent, the Shawnee County Republican party, to select the successor than for the petitioner to do so. Respondents' argument, hence, is not that an individual is replaced, but that the party selected by an individual after election is replaced. The Wyoming court, as we have seen, rejected this argument on public policy grounds.

In any event, an individual's freedom to switch party affiliation is not in question, nor is it relevant to the correct interpretation of the statute in question. Cline did switch party affiliation, and that is how this case arose. Respondents' attempt to implicate the federal constitutional protection in the interpretation of K.S.A. 25-3902 is unavailing.

Respondents also argue that the statutory phrase, "of the party," must be construed to mean the public official's party at the time the vacancy occurs in order to avoid a situation in which no party is authorized to fill the vacancy. Respondents warn that construing "of the party" to mean the official's party at the time of election, as advocated by petitioners, would result in no party being authorized to fill a vacancy when an unaffiliated person is elected to office. Of course, respondent's interpretation would create the same problem unless, once elected, the unaffiliated official joined a party.

Respondents argue that because the only time the statutory provisions have application is when a vacancy occurs, the plain meaning of "of the party" is the official's party at the time of the vacancy. They further argue that if the legislature meant some time other than the time of the vacancy, it would have identified that other time. The Wyoming court in *Richards* reasoned, contrary to respondents' position, that the legislature did not identify the time because it assumed that the time would not be an issue. The Wyoming court reasoned that the legislature enacted the statutory scheme with the rule in mind rather than the exception, and only in exceptional circumstances will the person leaving office not be affiliated with the political party that supported him or her in the

last election. Hence, the legislature's silence is not to be taken as indicating that the party to be notified of the vacancy must be the official's party at the time the vacancy occurred. The Wyoming court's reasoning, because it seems unlikely that the legislature considered the possibility of an elected official's switching parties, is more persuasive than that of Respondents.

In *Rogers*, 221 Kan. at 227, this court noted:

"While matters of public policy are for the legislature, we would also note that the construction we have given K.S.A. 1975 Supp. 46-143 does have a beneficial effect favoring public interest. It is the accepted view that it is in the public interest for an elected office to be filled, and for the member-elect to exercise all the rights, responsibilities and duties of his office until the appropriate authority decides otherwise."

In our view, public policy comports with common sense and logic, *i.e.*, that the will of the electorate at the preceding election controls which party fills the vacancy. Here, absent the relatively rare change in party affiliation, that would have occurred. It seems reasonable and logical to conclude that the legislature did not intend that the outcome be different simply because the individual officeholder changed party affiliation while in office. We construe the statutory phrase, "of the party" in K.S.A. 25-3902 to mean the political party to which the officeholder belonged at the time of the preceding election for that office. In so doing, the mandate of the preceding election is protected and continued until the next general election. Such construction is consistent with the election process. We, therefore, grant the writ of mandamus and direct the Governor to appoint Larry Wilson as treasurer of Shawnee County.

ABBOTT, J., not participating.

BRAZIL, S.J., assigned.