IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 110,845

STATE OF KANSAS,
*Appellee*,

v.

TRAVIS SHARP,
*Appellant.*

SYLLABUS BY THE COURT

1.

Appellate courts generally avoid making unnecessary constitutional decisions. Where there is a valid alternative ground for relief, an appellate court need not decide a constitutional challenge.

2.

Issues not presented to the trial court generally will not be considered for the first time on appeal.

3.

The Fourth Amendment to the United States Constitution guarantees the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, and a traffic stop is considered a seizure of the driver. Compliance with the Fourth Amendment requires the officer conducting the stop to have a reasonable and articulable suspicion, based on fact, that the person stopped has committed, is committing, or is about to commit a crime.

1

4.

Reasonable suspicion is a lower standard than probable cause, and what is reasonable depends on the totality of circumstances in the view of a trained law enforcement officer. In determining whether reasonable suspicion exists, the court must judge the officer's conduct in light of common sense and ordinary human experience under the totality of the circumstances. This determination is made with deference to a trained officer's ability to distinguish between innocent and suspicious circumstances, while recognizing that it represents a minimum level of objective justification and is considerably less than proof of wrongdoing by a preponderance of the evidence.

5.

The reviewing court does not pigeonhole each factor as to innocent or suspicious appearances but instead determines whether the totality of the circumstances justifies the detention. The relevant inquiry is not whether particular conduct is innocent or guilty, but whether a sufficient degree of suspicion attaches to particular types of noncriminal acts. The totality of the circumstances standard precludes a divide-and-conquer analysis under which factors that are readily susceptible to an innocent explanation are entitled to no weight.

6.

The essence of the totality of circumstances standard does not allow law enforcement officers or the courts to selectively choose the facts that would establish reasonable suspicion to justify police action. Rather, a totality of circumstances standard recognizes that events and conditions giving rise to reasonable suspicion are fluid rather than fixed and the existence of reasonable suspicion may change once new facts are observed by or become known to law enforcement.

Review of the judgment of the Court of Appeals in an unpublished opinion filed December 19, 2014. Appeal from Johnson District Court; KEVIN P. MORIARTY, judge. Opinion filed March 17, 2017. Judgment of the Court of Appeals reversing the district court is affirmed in part and vacated in part. Judgment of the district court is reversed.

*Richard P. Klein*, of Olathe, *Darrell Smith*, of Law Office of Darrell Smith, of Olathe, and *Rachelle Worrall Smith*, of the same firm, were on the briefs for appellant.

*Steven J. Obermeier*, senior deputy district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, were on the briefs for appellee.

The opinion of the court was delivered by

MALONE, J.: Travis Sharp was convicted of driving under the influence and unlawful exhibition of speed. In an unpublished opinion, the Court of Appeals reversed these convictions and the district court's denial of Sharp's motion to suppress evidence of his driving under the influence. *State v. Sharp*, No. 110,845, 2014 WL 7566576, at *7 (Kan. App. 2014) (unpublished opinion). The panel held K.S.A. 8-1565, which prohibits an unlawful "exhibition of speed or acceleration," was unconstitutionally vague and indefinite, the good faith exception was inapplicable, and the officer lacked reasonable suspicion to conduct a traffic stop based on a violation of K.S.A. 8-1565. 2014 WL 7566576, at *4-5.

The State petitioned for review arguing the panel misapplied the good faith exception, substantial competent evidence supports the denial of the motion to suppress, and K.S.A. 8-1565 is not unconstitutionally vague as applied to Sharp. The case was placed on summary calendar pursuant to Kansas Supreme Court Rule 7.01(c)(2) (2015 Kan. Ct. R. Annot. 59). We affirm the Court of Appeals decision holding the officer lacked reasonable suspicion to conduct the traffic stop but vacate its holding regarding

3

the constitutionality of the statute. See *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, Syl. ¶ 3, 367 P.3d 282 (2016) ("Appellate courts generally avoid making unnecessary constitutional decisions. . . . [W]here there is a valid alternative ground for relief, an appellate court need not reach a constitutional challenge.").

On January 25, 2013, at approximately 5:30 p.m., Officer Donald Bowers was in a marked police car sitting at a traffic light, in a left turn lane, next to two lanes of eastbound traffic. Bowers' attention was drawn to a dark-colored SUV two lanes to his right and slightly ahead of his car when he heard an engine revving and saw a heavy cloud of smoke coming from underneath the vehicle. Bowers smelled rubber and saw the right rear tire spinning and smoking while the vehicle was stationary. Bowers explained this was called "power braking" and is accomplished by applying the brake and the gas at the same time. Bowers described it as a show of "physical endurance of a vehicle" and was to him "a preparation of a drag race warming the tires."

Bowers decided to stop the vehicle after the light changed. Because he was surrounded by stationary traffic, Bowers turned on his *rear* flashing lights to alert the drivers in *back of* him of his intention to change lanes so he could move behind the SUV. When the light turned green, the SUV did not "tear out from the intersection" nor accelerate in any manner that would provide another justification for stopping him. Bowers followed the vehicle through the intersection, and once Bowers had cleared the intersection, he activated "lights that [the driver of the SUV, Travis Sharp] was able to see" and conducted a traffic stop.

When Bowers asked Sharp if he knew why he had been stopped, Sharp responded "for burning my tires." Sharp responded strangely and slowly to Bowers' initial questions, admitted to drinking "one Buzz Ball," and proceeded to exhibit multiple indications of

4

impairment on field sobriety testing. His preliminary breath test and breath test indicated the presence of alcohol over the legal limit.

Sharp was charged with exhibition of speed under K.S.A. 8-1565 and misdemeanor driving under the influence under K.S.A. 8-1567. Sharp moved to suppress all evidence, reasoning the officer lacked reasonable suspicion to conduct the traffic stop. At the suppression hearing, Bowers testified the sole reason he made the traffic stop was because Sharp was spinning his tires at the stoplight. Defense counsel argued the evidence did not establish an exhibition of speed or acceleration under a strict construction of K.S.A. 8-1565(a). The State countered that burning tires at a red light is an exhibition of the power, endurance, and capabilities of the vehicle, such as the ability to accelerate off the stop or to speed.

The district court denied the motion, reasoning the officer had reasonable suspicion to stop the vehicle which was showing it *could* drag race based on the racing engine, the smell of the tires, and the back tires squealing. In so doing, the district court stated:  "Even if the officer only saw what he saw, and I think it meets the statute, there is some room for interpretation as both attorneys have done as to what the—what the exact words mean. But clearly, I think that the intent of the legislature was to prohibit this type of behavior."

Sharp filed a motion to reconsider additionally arguing K.S.A. 8-1565 is unconstitutional because exhibition of speed or acceleration is not adequately defined and requires a person of common intelligence to guess at its meaning. The district court summarily denied the motion to reconsider. The parties agreed to a bench trial based on stipulated facts in order to preserve Sharp's motion to suppress. Sharp was convicted of second offense driving under the influence under K.S.A. 8-1567 and exhibition of speed under K.S.A. 8-1565.

5

Sharp appealed claiming the district court erred in denying his motion to suppress because the portion of K.S.A. 8-1565 prohibiting exhibitions of speed or acceleration is unconstitutionally vague and indefinite, and Bowers lacked the necessary reasonable suspicion to conduct a traffic stop based on a violation of the statute.

The *Sharp* panel held K.S.A. 8-1565 was substantially similar to a city ordinance prohibiting an unlawful "exhibition of speed" which this court held was unconstitutionally vague in *City of Altamont v. Finkle*, 224 Kan. 221, 224, 579 P.2d 712 (1978). Applying *Finkle*, the *Sharp* panel held the provision in K.S.A. 8-1565 "making it unlawful to exhibit speed or acceleration uses language that is so vague and indefinite that one charged in such terms could not be expected to understand the nature and elements of the prohibited conduct." 2014 WL 7566576, at *4. The panel also rejected the State's reliance on both an Olathe ordinance to provide a more precise definition of what it means to engage in "exhibition of speed or acceleration" and the good faith exception to the exclusionary rule. 2014 WL 7566576, at *4-5.

Alternatively, the panel held that even if the statute was constitutional, Bowers lacked reasonable suspicion to conduct a traffic stop. The panel reasoned that under a strict construction of the statute in favor of the accused, "speed and acceleration are both words that denote movement of some kind," and all of the actions identified by Bowers as justification to stop Sharp happened while the vehicle was stationary. 2014 WL 7566576, at *6. Additionally, it found no facts in the record to support a reasonable suspicion that Sharp was about to participate in a drag race. Although Bowers believed Sharp was warming his tires to participate in a race, Sharp did not accelerate in a manner that would justify a stop for drag racing. Under the totality of the circumstances, the panel concluded Sharp's actions did not rise to the level of a particularized and objective basis for suspecting prior, current, or future criminal activity. 2014 WL 7566576, at *6.

6

The panel reversed the district court's denial of the motion to suppress and both of Sharp's convictions, vacated the sentences and fines imposed, and remanded with directions to grant the motion to suppress. *Sharp*, 2014 WL 7566576, at *7. This court granted the State's petition for review which argued the panel misapplied the good faith exception, substantial competent evidence supports the denial of the motion to suppress, and K.S.A. 8-1565 is not unconstitutionally vague as applied to Sharp.

We first address the State's reasonable suspicion argument as it is dispositive of the case. The State argues the panel erred by reversing the district court's decision denying the motion to suppress because reasonable suspicion did not exist to support the traffic stop. "The district court's factual findings on a motion to suppress evidence are reviewed for substantial competent evidence. The legal conclusions drawn from that evidence are reviewed de novo." *State v. Pettay*, 299 Kan. 763, 768, 326 P.3d 1039 (2014).

Similarly, "[w]hether reasonable suspicion exists is a question of law, and appellate courts review this question with a mixed standard of review, determining whether substantial competent evidence supports the district court's factual findings, while the legal conclusion is reviewed de novo." *City of Wichita v. Molitor*, 301 Kan. 251, 264-65, 341 P.3d 1275 (2015).

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and a traffic stop is considered a seizure of the driver. *City of Atwood v. Pianalto*, 301 Kan. 1008, 1011, 350 P.3d 1048 (2015). Compliance with the Fourth Amendment requires the officer conducting the stop to "have

7

a reasonable and articulable suspicion, based on fact, that the person stopped has committed, is committing, or is about to commit a crime." 301 Kan. at 1011.

Reasonable suspicion is a lower standard than probable cause, and "[w]hat is reasonable depends on the totality of circumstances in the view of a trained law enforcement officer." *State v. Martinez*, 296 Kan. 482, 487, 293 P.3d 718 (2013). In determining whether reasonable suspicion exists, the court must judge the officer's conduct in light of common sense and ordinary human experience under the totality of the circumstances. This determination is made with deference to a trained officer's "ability to distinguish between innocent and suspicious circumstances," while recognizing that it represents a "minimum level of objective justification" and is "considerably less than proof of wrongdoing by a preponderance of the evidence." *Pianalto*, 301 Kan. at 1011 (quoting *Martinez*, 296 Kan. at 487). On appeal,

> "[t]he reviewing court does not 'pigeonhole' each factor as to innocent or suspicious appearances, but instead determines whether the totality of the circumstances justifies the detention. *State v. DeMarco*, 263 Kan. 727, 734-35, 952 P.2d 1276 (1998). The relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but whether a sufficient degree of suspicion attaches to particular types of noncriminal acts. *United States v. Sokolow,* 490 U.S. 1, 10, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989). The totality of the circumstances standard precludes a 'divide-and-conquer analysis' under which factors that are 'readily susceptible to an innocent explanation [are] entitled to "no weight."' *United States v. Arvizu,* 534 U.S. 266, 274, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002)." *State v. Coleman*, 292 Kan. 813, 817-18, 257 P.3d 320 (2011).

See also *State v. Chapman*, 305 Kan. 365, 371, 381 P.3d 458 (2016).

In denying the motion to suppress, the district court reasoned Bowers had reasonable suspicion to approach the vehicle after he heard the engine racing, smelled the

tires, and "saw" the back tires squealing. The court held K.S.A. 8-1565 was "clear enough to show that there was a showing that this vehicle could race," and also noted the possibility that Sharp's actions amounted to an attempted crime as well.

The *Sharp* panel disagreed, holding the officer lacked reasonable suspicion to conduct the traffic stop in this case:

"Assuming K.S.A. 8-1565 is constitutional, Sharp argues that Bowers lacked reasonable suspicion to stop Sharp because spinning tires while stationary is not a violation of that statute. The State disagrees, arguing in its brief that by spinning his tires and generating smoke, Sharp 'was committing, had committed or was about to commit a violation of K.S.A. 8-1565.' The statute at issue prohibits exhibitions of speed or acceleration. Criminal statutes must be strictly construed in favor of the accused. *State v. Coman*, 294 Kan. 84, 96, 273 P.3d 701 (2012). Strictly construed, speed and acceleration are both words that denote movement of some kind. Yet, all of the actions Bowers identified as justification for his decision to stop Sharp occurred while Sharp was stationary. In order to show a violation of this statute, the State would need to prove, at a minimum, that Sharp was moving or accelerating. There are no such facts in the record.

"There also are no facts in the record to support reasonable suspicion that Sharp was about to participate in a race in violation of K.S.A. 8-1565. Officer Bowers testified that he believed Sharp was power braking in order to warm Sharp's tires in preparation of a drag race. But Sharp did not actually initiate the traffic stop until after both he and Sharp had cleared the intersection. Bowers did not observe Sharp accelerating in a way that would justify a traffic stop for drag racing. A determination of reasonable suspicion is based on the totality of the circumstances from the viewpoint of those versed in the field of law enforcement. [*State v.*] *Pollman*, 286 Kan. [881,] 890[, 190 P.3d 234 (2008)]. While Bowers did believe Sharp was preparing for a drag race, he also observed Sharp accelerate appropriately when the traffic light turned green and observed no other unlawful behavior prior to activating his front lights to pull Sharp over. Sharp's actions after the light turned green directly contradict Bowers' belief that Sharp was preparing for a race. Since Bowers did not initiate a stop until after he cleared the intersection, we are

9

required to consider that fact when determining whether reasonable suspicion existed for the stop. When considering the totality of the circumstances, Sharp's actions simply do not rise to the level of a particularized and objective basis for suspecting prior, current or future criminal activity. As a result, even if the language of the statute at issue was constitutional, the district court erred by denying Sharp['s] motion to suppress." *Sharp*, 2014 WL 7566576, at *6.

We agree with this sound analysis. A strict construction of the statutory language an "exhibition of speed or acceleration" would necessarily "denote movement of some kind." 2014 WL 7566576, at *6; see *Coman*, 294 Kan. at 96. In this case, no evidence was presented that Sharp accelerated or moved his vehicle at all when the officer decided to stop the vehicle. Although Bowers testified he thought Sharp was preparing his tires to drag race, a trained law enforcement officer would realize this concern was unwarranted once Sharp was observed proceeding lawfully after the light turned green. According to Bower's testimony, Sharp did not "tear out" from the intersection nor accelerate in any manner that would provide a reason to stop the vehicle. Compare *State v. Giger*, No. 94,854, 2006 WL 619327, at *2-3 (Kan. App. 2006) (unpublished opinion) (mere acceleration and squealing of tires as a vehicle enters a turn was insufficient to establish the defendant's commission of a violation of K.S.A. 8-1565[a]).

The State tries to avoid these facts by arguing that reasonable suspicion arose because Sharp was attempting to violate or was about to violate K.S.A. 8-1565 by spinning his tires. See K.S.A. 2015 Supp. 21-5301(a) ("An attempt is any overt act toward the perpetration of a crime done by a person who intends to commit such crime but fails in the perpetration thereof or is prevented or intercepted in executing such crime.); K.S.A. 22-2402(1) ("a law enforcement officer may stop any person in a public place whom such officer reasonably suspects is committing, has committed or is about to commit a crime").

10

The State's argument is unpersuasive because, like the dissent today, it fails to evaluate the facts under the totality of the circumstances by concluding its analysis at the officer's initial observations. While Bowers testified he thought Sharp was spinning his tires in preparation to race, Sharp's normal, lawful acceleration through the intersection objectively dispels Bower's suspicion that he was preparing to drag race. The dissent suggests that our analysis establishes that "reasonable suspicion, once obtained, can be lost if, as law enforcement closes in (perhaps drawing the attention of the suspect), the suspect breaks off his or her suspicious behavior before law enforcement initiates the stop." Slip op. at 16.

However, this notion assumes facts and inferences that are not supported by the record, and ignores our mandate to consider the *totality* of the circumstances without "pigeonholing" each factor as innocent or suspicious or individually considering each factor in a "divide and conquer" analysis. See *Coleman*, 292 Kan. at 817-18. Although Bowers testified he decided to stop the vehicle before the light had changed to green, he was two lanes over and slightly behind Sharp's vehicle when he turned on his *rear* flashing lights. Bowers did not turn on the overhead lights that Sharp could see until *after* they had cleared the intersection. No evidence was presented, as the dissent presumes, that Sharp saw the officer's vehicle and changed his course of action. Rather, because of his location with respect to Sharp's vehicle*, i.e.,* surrounded by stationary traffic, Bowers had the benefit of knowing his suspicion that Sharp was preparing to drag race was incorrect by observing Sharp's normal, lawful acceleration when the light turned green. Under the totality of the circumstances, a trained officer would not have reasonably suspected that Sharp had committed, was committing, or was about to commit a crime when Bowers conducted the traffic stop.

The dissent suggests our decision "defenestrate[s] law enforcement and create[s] a public safety risk" and "defies common sense." Slip op. at 16. We disagree. Our decision

11

follows the long recognized legal standard that law enforcement officers must consider all of the facts known to them to justify their actions. Thus, in evaluating whether reasonable suspicion of past, present, or future criminal activity exists to validate a traffic stop, officers can neither ignore certain facts nor stop considering ongoing circumstances.

In other words, the essence of the "totality of circumstances" standard does not allow law enforcement officers or the courts to selectively choose the facts that would establish reasonable suspicion to justify police action. Compare *Arvizu*, 534 U.S. at 274 (reasonable suspicion analysis considering each factor in isolation "does not take into account the 'totality of the circumstances,' as our cases have understood that phrase"). Rather, a "totality of circumstances" standard recognizes that events and conditions giving rise to reasonable suspicion are fluid rather than fixed, and the existence of reasonable suspicion may change once new facts are observed by or become known to law enforcement. Indeed, if law enforcement officers were allowed to cherry-pick certain facts, they would be able to operate with unbridled discretion to conduct traffic stops with impunity.

We decline to reach the State's alternative argument that reasonable suspicion arose based on a violation of Olathe Municipal Code 10.01.037 (2001) under *Devenpeck v. Alford*, 543 U.S. 146, 153, 125 S. Ct. 588, 160 L. Ed. 2d 537 (2004), because it was not addressed below. See *State v. Holt*, 298 Kan. 469, Syl. ¶ 9, 313 P.3d 826 (2013) ("Issues not presented to the trial court generally will not be considered for the first time on appeal.").

The district court's conclusion that the officer had reasonable suspicion to conduct a traffic stop was not based on substantial competent evidence. As the officer lacked reasonable suspicion to conduct the traffic stop, the district court erroneously denied the motion to suppress evidence of driving under the influence obtained thereafter. See

12

K.S.A. 22-2402(1); *State v. Jones*, 300 Kan. 630, 637, 333 P.3d 886 (2014) (for a traffic stop to be constitutionally reasonable, officer must have reasonable suspicion based on articulable facts that a crime has been, is being, or is about to be committed).

As our analysis provides an alternative ground for relief, we need not decide the constitutional challenges raised in this case. See *Wilson v. Sebelius*, 276 Kan. 87, 91, 72 P.3d 553 (2003). We thus summarily vacate the panel's determination that K.S.A. 8-1565 is unconstitutionally vague as applied to Sharp. In addition, the application of the good faith exception will not be considered because the facts and argument were not presented to the trial court.

The Court of Appeals decision is affirmed in part and vacated in part. We reverse Sharp's convictions, vacate his sentences and fines, and remand the case to the district court with directions to grant the motion to suppress for the reasons stated herein.

BEIER, J., not participating.
MICHAEL J. MALONE, Senior Judge, assigned.[1]

\* \* \*

STEGALL, J., dissenting:  I cannot agree with our decision to reverse the district court's finding of a lawful stop based on reasonable suspicion. To establish the lawfulness of the stop in this case, the State need only show that the officer had a "particularized and objective basis" for suspecting that Sharp was "involved in criminal activity." *State v.*

---

[1]**REPORTER'S NOTE:**  Senior Judge Malone was appointed to hear case No. 110,845 vice Justice Beier under the authority vested in the Supreme Court by K.S.A. 20-2616.

13

*Pollman*, 286 Kan. 881, Syl. ¶ 4, 190 P.3d 234 (2008). In other words, the reasonable suspicion standard does not require facts establishing a violation of the law. It is enough simply to show facts sufficient to establish a particularized and objective suspicion that "criminal activity may be afoot." *Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). Though a mere hunch "does not create reasonable suspicion," the evidentiary threshold is "'considerably less than proof of wrongdoing by a preponderance of the evidence.'" *Navarette v. California*, 572 U.S. ___, 134 S. Ct. 1683, 1687, 188 L. Ed. 2d 680 (2014). Furthermore, a "determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct." *United States v. Arvizu*, 534 U.S. 266, 277, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002).

> "Our cases have recognized that the concept of reasonable suspicion is somewhat abstract. [Citations omitted.] But we have deliberately avoided reducing it to "'a neat set of legal rules,"' *Ornelas*[ *v. United States*, 517 U.S. 690, 695-96, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996)] (quoting *Illinois v. Gates*, 462 U.S. 213, 232, 103 S. Ct. 2317, 76 L. Ed. 2d 527 [1983])." *Arvizu*, 534 U.S. at 274.

Moreover, the "totality of the circumstances" standard "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them." *Arvizu*, 534 U.S. at 273. Finally, a reviewing court is required to give "due weight" to the factual inferences drawn by both the district court and law enforcement officers. *Ornelas,* 517 U.S. at 699.

With this framework in mind, the facts before us—adequately set forth in the majority opinion—may be summarized as follows:

While stopped in traffic at a crowded intersection, Officer Bowers observed Sharp spinning his tires using a technique referred to as power braking. From his patrol car positioned slightly behind Sharp in a different lane, Officer Bowers observed Sharp's

14

spinning wheels, a heavy cloud of smoke emanating from under Sharp's vehicle, and the smell of burning rubber. Officer Bowers believed Sharp was "warming" his tires in preparation of a drag race once the light turned green. Based on his observations and knowledge that drag racing is illegal, Officer Bowers believed he had a particularized and objective suspicion that criminal activity was afoot—*i.e.*, was about to occur—and he decided to make a stop.

In preparation for making the stop, and possibly preventing the illegal conduct from occurring (thus guarding public safety), Officer Bowers initiated his rear emergency lights. He was surrounded by vehicles, so he did not immediately attempt a stop because, as he testified, "it wasn't the appropriate time for safety to stop somebody in traffic like that." The light then turned green and Sharp proceeded through the intersection in a normal manner. Officer Bowers activated his front emergency lights and stopped Sharp. After Officer Bowers asked Sharp if he knew why he pulled him over, Sharp immediately acknowledged that it was because he had been "burning tires." One reasonable inference that can be drawn from these facts—one apparently given little weight by the majority— is that Sharp changed his behavior due to the presence of Officer Bowers.

The district court ruled that the question of whether reasonable suspicion existed under these circumstances was not "a particularly close call"—and I agree. But the Court of Appeals found no reasonable suspicion based exclusively on the fact that Sharp proceeded normally through the intersection after the signal turned green. *State v. Sharp*, No. 110,845, 2014 WL 7566576, at *6 (Kan. App. 2014) (unpublished opinion) (holding that there are "no facts in the record to support reasonable suspicion that Sharp was about to participate in a race in violation of K.S.A. 8-1565 . . . [because] Sharp's actions after the light turned green directly contradict Bowers' belief that Sharp was preparing for a race"). Likewise, today's majority concludes that "a trained law enforcement officer would realize this concern"—the concern that Sharp was about to drag race—"was

15

unwarranted once Sharp was observed proceeding lawfully after the light turned green." Slip op. at 10.

The rule of this case, then, appears to be that reasonable suspicion, once obtained, can be lost if, as law enforcement closes in (perhaps drawing the attention of the suspect), the suspect breaks off his or her suspicious behavior before law enforcement initiates the stop. Not only does this rule defenestrate law enforcement and create a public safety risk, it defies common sense. In the world imagined by today's majority, a driver who spins his or her tires while stopped at an intersection, creating a large black cloud of burning rubber, is nothing more than an innocent out-and-about motorist once he or she proceeds normally through the intersection. I suggest experienced law enforcement officers know better, and we ought to give due weight to that knowledge and experience here.

In my judgment, Officer Bowers acted appropriately given the circumstances, and the fact that Sharp did not consummate the crime of drag racing immediately at that intersection did not deprive Officer Bowers of the particularized and objective suspicion that criminal activity may have been afoot—perhaps even at the next intersection—had Officer Bowers declined to effect a stop.

Finally, notwithstanding Officer Bowers' subjectively reasonable rationale for the stop premised Sharp's preparation for drag racing, the observed behavior was *objectively* suspicious in other respects. See *Whren v. United States*, 517 U.S. 806, 812-13, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996) ("[W]e [have] never held . . . that an officer's motive invalidates objectively justifiable behavior under the Fourth Amendment; but we have repeatedly held and asserted the contrary."). Sustained power braking at a traffic intersection is not ordinary behavior and has no innocent explanation. It is conduct that lies outside the common sense norms expected by law abiding motorists. It is inherently unsafe and disturbs the ordinary and orderly flow of traffic on our roadways. All of which

16

can and should cause a reasonable law enforcement officer exercising the appropriate discretion and judgment borne of experience in the field to conclude that the operator of such a vehicle may be driving recklessly or impaired—a condition caused either by a conscious decision to disregard traffic laws, or (as turned out to be the case here) by a lack of inhibition brought on by intoxication.

For these reasons, I dissent.