NOT DESIGNATED FOR PUBLICATION

No. 120,477

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KEVIN K. BEASLEY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; THOMAS KELLY RYAN, judge. Opinion filed September 4, 2020. Reversed and remanded with directions.

*Kasper Schirer*, of Kansas Appellate Defender Office, for appellant.

*Kendall Kaul* and *Shawn E. Minihan,* assistant district attorneys, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

*Zal K. Shroff* and *Lauren Bonds*, of ACLU Foundation of Kansas, of Overland Park, for amicus curiae.

Before WARNER, P.J., STANDRIDGE and GARDNER, JJ.

PER CURIAM:  In 2009, Kevin Beasley was granted an 18-month term of probation with an underlying 28-month sentence after pleading guilty to three counts of forgery. The district court also ordered Beasley to pay $21,428.50 in restitution. In 2011, Beasley agreed to extend his probation to allow him more time to pay restitution. In 2014, the district court entered an ex parte order extending Beasley's probation for 12 months based on unpaid restitution. In 2015, the district court extended Beasley's probation for 60

1

months or until he paid his restitution and sentenced Beasley to a three-day quick dip sanction. Finally, in 2018, the district court revoked Beasley's probation for failing to report to his supervising officers and for nonpayment of restitution and ordered Beasley to serve his 28-month prison sentence.

Beasley appeals from the probation revocation, arguing K.S.A. 2018 Supp. 21-6608(c)(7) is unconstitutional because it allows the court to extend probation based solely on the nonpayment of restitution. Beasley also argues that the district court's 2014 ex parte order was unconstitutional. Without that extension, his probationary term would have expired on January 3, 2015, thus the district court lacked jurisdiction to revoke his probation in 2018. Beasley also argues that the district court improperly bypassed the intermediate sanctions required before revoking his probation.

We reverse, finding the district court improperly revoked Beasley's probation by not ordering an intermediate sanction required under K.S.A. 2018 Supp. 22-3716(c) and not invoking a valid exception.

*Factual and Procedural Background*

In December 2009, Beasley pleaded guilty to three counts of forgery. The district court sentenced Beasley to a 28-month prison term but suspended that sentence in favor of an 18-month term of probation. The district court also ordered Beasley to pay $21,428.50 in restitution to the First National Bank of Olathe, in accordance with his plea agreement.

In 2011, Beasley agreed to extend his probation to allow him to pay off the balance of restitution he still owed, so the district court extended Beasley's probation until June 21, 2012. But later that year, the State moved to revoke Beasley's probation for failing to attend and complete drug and alcohol treatment and for failing to report to his

2

supervisor. The State withdrew that motion, however, after Beasley agreed to another 12-month extension. In accordance with the agreement, the district court extended Beasley's probation until December 14, 2012.

The State filed its second motion to revoke Beasley's probation in June 2012 after Beasley admitted to and tested positive for using cocaine. Beasley stipulated to that violation on January 3, 2013. The district court entered an order revoking and then reinstating Beasley's probation for 24 months—until January 3, 2015.

On December 8, 2014, the district court issued an ex parte order at the State's request, extending Beasley's probation under K.S.A. 2014 Supp. 21-6608(c)(7). That statute permits the extension of restitution based on unpaid restitution: "If the defendant is ordered to pay full or partial restitution, the period may be continued as long as the amount of restitution ordered has not been paid." The court ordered his probation "extended until January 3rd, 2016 or until paid in full, as the defendant still owes $20,953.94 in restitution, and the balance will not be paid in full by the termination date." The record does not reflect that the district court held a hearing on the matter, that Beasley was notified of a potential violation finding, or that Beasley's attorney approved the order. But the State mailed Beasley a copy of the order the day it was filed.

Almost a year passed. Then on December 3, 2015, the State filed its third motion to revoke Beasley's probation. That motion argued that Beasley still owed the bulk of his restitution, had failed to report to his supervisor, and had been charged with a new crime. Beasley stipulated to these violations and the court ordered him to serve a "quick-dip" sanction of three days in jail. The district court then extended Beasley's probation for another 60 months. At the violation hearing, the State told the district court that there was no agreed plan for repayment: "It is a lot of money that [Beasley] still owes, so we don't really necessarily have a plan. We are kind of hoping for some good fortune to come his

3

way." Beasley's counsel explained that Beasley was paying at least $10 per month and was "showing a good effort" to get the restitution paid off.

The State filed its final motion to revoke Beasley's probation in March 2018, alleging that Beasley changed his residence without informing his probation officer and that he still owed an outstanding balance on the restitution order. At the revocation hearing, Beasley stipulated to those violations and did not move to reinstate his probation. The district court questioned Beasley, then revoked his probation and ordered Beasley to serve his underlying sentence. Its written order states: "[Defendant] does NOT request reinstatement—wants to serve sentence."

Beasley filed an untimely appeal, so we remanded the case to the district court to determine whether an *Ortiz* exception excused Beasley's untimely filing. The district court found that an exception applied because Beasley had not been told at the 2018 hearing of his right to appeal his probation revocation. We thus retained the appeal. We also permitted the American Civil Liberties Union (ACLU) to file a brief as an amicus curiae, yet we do not consider arguments raised solely by amici curiae. See *State ex rel. Six v. Kansas Lottery*, 286 Kan. 557, 561, 186 P.3d 183 (2008).

*The District Court Abused Its Discretion by Revoking Beasley's Probation Without Invoking a Valid Statutory Bypass of Intermediate Sanctions.*

Beasley argues that because the district court did not rely on a valid bypass to the graduated intermediate sanctions, this court must reverse his probation revocation.

We begin our analysis with this statutory claim because under the doctrine of constitutional avoidance, we need not reach constitutional challenges when a valid alternative ground exists for our decision. See *Wilson v. Sebelius*, 276 Kan. 87, 91, 72 P.3d 553 (2003). "[A]ppellate courts generally avoid making unnecessary constitutional

4

decisions." 276 Kan. at 91. And Kansas courts do not issue advisory opinions. See *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, 659, 367 P.3d 282 (2016). By first deciding whether the district court erred by bypassing intermediate sanctions, we avoid producing a mere advisory opinion on constitutionality.

We review the district court's decision to revoke probation for an abuse of discretion. *State v. Hurley*, 303 Kan. 575, 580, 363 P.3d 1095 (2016). Beasley—as the party alleging an abuse of discretion occurred—bears the burden of showing that the district court abused its discretion. See *State v. Rojas-Marceleno*, 295 Kan. 525, 531, 285 P.3d 361 (2012).

The district court's discretion in determining whether to revoke a defendant's probation is limited by the statute governing probation revocation. Under K.S.A. 2018 Supp. 22-3716(c), which was in effect when the district court revoked Beasley's probation, the district court had to impose intermediate sanctions before revoking probation. See *State v. Clapp*, 308 Kan. 976, 985, 425 P.3d 605 (2018). That statute sets out the procedure for revoking an offender's probation. It requires the district court to impose a series of graduated intermediate sanctions before revoking probation and ordering a defendant to serve the prison sentence. These sanctions ranged from continuation or modification of the terms of probation to brief periods of confinement in jail or longer periods of confinement in prison. The sanctions gradually increase depending on the number of sanctions already imposed. See K.S.A. 2018 Supp. 22-3716(c)(1)(A)-(D).

Because the district court had imposed a 3-day jail sanction, it was allowed to order a 120 or 180-day sanction. See K.S.A. 2018 Supp. 22-3716(c)(1)(B)-(D). It instead revoked Beasley's probation and ordered him to serve his stayed sentence, in violation of K.S.A. 2018 Supp. 22-3716(c)(1)(E). And although exceptions allow the district court to bypass the graduated sanction framework—K.S.A. 2018 Supp. 22-3716(c)(8)-(9)—the

district court did not invoke an exception here. Thus, under K.S.A. 2018 Supp. 22-3716, the district court's only option was to impose an intermediate prison sanction. The district court's legal error in failing to correctly apply the statute constitutes an abuse of discretion. See *State v. Ballou*, 310 Kan. 591, 615, 448 P.3d 479 (2019).

The State's argument to the contrary focuses on the fact that Beasley did not move to reinstate his probation at the revocation hearing: "As a practical matter, if a defendant does not wish to serve probation, the State of Kansas has no ability to force him to abide by the conditions of probation. By rejecting the reinstatement of probation, Beasley waived any argument for its re-imposition." The State correctly points out that probation is "'an act of grace by the sentencing judge and, unless otherwise required by law, is granted as a privilege and not as a matter of right.'" *State v. Gary*, 282 Kan. 232, 237, 144 P.3d 634 (2006). But the State's argument implies that Beasley had a duty to move to reinstate his probation before it was revoked, or that the district court could bypass the statutory prerequisites to revoking probation because Beasley did not move to reinstate. Neither of those is correct under the statute. The district court has a "duty to apply the law in conformity with the legislative enactments in this State." *Clapp*, 308 Kan. at 990.

True, at the revocation hearing Beasley stipulated to the violations and did not move to reinstate his probation. The district court then asked Beasley questions to make sure that Beasley understood the specific violations that he was stipulating to, that he had a right to make the State prove the violations at an evidentiary hearing, and that he would most likely go to jail.

But the statute requires intermediate sanctions, nonetheless, and the State does not convince us that the statute permits a defendant to waive them. "The Legislature adopted the intermediate sanctions in part to limit the State's prison population and not merely to give convicted criminals on probation a break, so public policy considerations may

6

counsel against a defendant's ability to waive the requirements of K.S.A. 2017 Supp. 22-3716." *State v. Brown*, No. 117,794, 2018 WL 4039194, at *3 (Kan. App. 2018) (unpublished opinion). See *State v. Clutchey*, No. 114,566, 2016 WL 7178260, at *2 (Kan. App. 2016) (unpublished opinion) (noting "strong legislative purpose expressed in K.S.A. 2015 Supp. 22-3716[c] for reform of probation and sentencing standards with an eye toward alleviating both prison overcrowding and extended incarceration of defendants amenable to lesser sanctions"). We need not decide whether a probationer can ever waive the protections of intermediate sanctions. Rather, that question is for another day, as the State has neither cited any authority in support of its claim of waiver nor developed that argument. See *State v. Clay*, 300 Kan. 401, 416, 329 P.3d 484 (2014).

Accordingly, as in *Clapp*, we reverse and remand for a new dispositional hearing to comply with K.S.A. 2018 Supp. 22-3716. At the hearing, the only issue before the court is the appropriate disposition, as Beasley did not challenge the district court's finding that he violated his probation. Thus, the court may either impose an appropriate graduated sanction under K.S.A. 2018 Supp. 22-3716(c)(1)(A)-(D) or, in the alternative, may set forth with particularity its reasons for bypassing intermediate sanctions before ordering Beasley to serve his underlying sentence.

*Revoking Probation Based on Failure to Pay Restitution Requires Special Precautions*

Because our statutory analysis resolves the matter, we will not resolve the constitutional question presented on appeal. But because the considerations presented in this appeal are likely to recur on remand, we briefly address the framework in which those concerns arise. See *State v. Hernandez*, 294 Kan. 200, 209, 273 P.3d 774 (2012).

Revoking probation based solely on a probationer's failure to pay restitution requires special precautions. See *State v. Ferguson*, 271 Kan. 613, 618, 23 P.3d 891

(2001) ("It is an abuse of discretion when the court 'automatically' revokes the probation due to nonpayment of restitution."). The record shows that the district court revoked Beasley's probation for his failure to report to his supervisor and for his failure to pay restitution. So it did not imprison Beasley based solely on his nonpayment of restitution. See *Ferguson*, 271 Kan. at 618-19 (finding no abuse of discretion in revoking probation because the State's motion to revoke showed that Ferguson committed several violations other than failing to pay restitution). But it may well be that the district court would not have revoked probation based solely on Beasley's failure to report.

To revoke probation, a district court must conform with due process. In *Morrissey v. Brewer*, 408 U.S. 471, 488-89, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972), the United States Supreme Court established minimum due process rights for parolees and extended those rights to probationers in *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973).

> "'Minimum due process includes written notice of the claimed violations of probation, disclosure to the probationer of the evidence against him or her, the opportunity to be heard in person and to present evidence and witnesses, the right to confront and cross-examine adverse witnesses, a neutral and detached hearing body, and a written statement by the factfinder as to the evidence relied on and reasons for revoking probation. The probationer also has a right to the assistance of counsel.' *State v. Billings*, 30 Kan. App. 2d 236, 238, 39 P.3d 682 (2002) (citing *Black v. Romano*, 471 U.S. 606, 612, 105 S. Ct. 2254, 85 L. Ed. 2d 636 [1985])." *State v. Hurley*, 303 Kan. 575, 582, 363 P.3d 1095 (2016).

But an extension of probation is constitutionally different from a revocation of probation. In *State v. Gordon*, 275 Kan. 393, 402-07, 66 P.3d 903 (2003), our Supreme Court held that the district court is not required to hold a hearing before extending probation for nonpayment of restitution, noting that issues as to whether restitution had not been paid are not of sufficient magnitude as to require an adversarial procedure for

8

resolution. A hearing is necessary before revoking probation. But extension, unlike revocation, involves only the future possibility of incarceration, thus a probationer's liberty interest is not significant enough to warrant an extension hearing. 275 Kan. at 410. *Gordon* held that extending probation without a hearing does not violate the constitutional rights to equal protection or due process, nor does it render the provisions of the statute unconstitutional. 275 Kan. at 410 (examining K.S.A. 2002 Supp. 21-4611[c][7], the precursor to K.S.A. 2018 Supp. 21-6608[c][7]).

Similarly, in *State v. McDonald*, 272 Kan. 222, Syl. ¶ 5, 32 P.3d 1167 (2001), the court found no statutory right to counsel at proceedings to extend the term of probation. McDonald argued that extending his probation for nonpayment of restitution without being afforded an attorney violated his due process rights under the United States Constitution. The court noted that the subsection involving the nonpayment of restitution does not mention the right to counsel, unlike the provisions for the revocation of probation. So by negative inference, "[i]t is thus apparent there is no statutory right to counsel in Kansas at proceedings to extend the term of probation." 272 Kan. at 226-27. *McDonald* held that there is no constitutional violation when the court extends probation without counsel. 272 Kan. at 227-29. So the procedural due process protections applied by the United States Supreme Court in *Morrissey*, *Gagnon*, and *Black* to parole and probation revocation proceedings do not apply to probation extension proceedings. We thus find nothing suspect about the fact the district court's ex parte extension of Beasley's probation in 2014.

Still, "[a] defendant cannot be incarcerated merely because he or she does not have the money to pay a fine or restitution." *Gordon*, 275 Kan. at 411 (citing *State v. Higgins*, 240 Kan. 756, 759, 732 P.2d 760 [1987]). See Kansas Constitution Bill of Rights, §16 ("No person shall be imprisoned for debt, except in cases of fraud."). This same rule applies to the payment of restitution as a condition of probation:

"[I]t is constitutionally impermissible to incarcerate an indigent criminal defendant merely because he does not have the money to pay the fine or make restitution as a condition of his probation. In this regard see *Bearden v. Georgia*, 461 U.S. 660, 103 S. Ct. 2064, 76 L. Ed. 2d 221 (1983). In the recent case of *State v. Duke*, 10 Kan. App. 2d 392, 699 P.2d 576 (1985), it was held that, in determining whether to revoke the defendant's probation, the trial court must consider why the probationer failed to pay a fine or court costs or make restitution as required by the conditions of the probation. The trial court held that imprisonment may be used as a means to enforce collection of fines, court costs, or restitution when the probationer willfully refuses to pay although he has the means to pay, or he does not make a bona fide effort to acquire the resources to pay." *Higgins*, 240 Kan. at 759.

*Bearden v. Georgia*, 461 U.S. 660, 668-69, 103 S. Ct. 2064, 76 L. Ed. 2d 221 (1983), held that it is constitutionally impermissible to automatically incarcerate an indigent criminal defendant merely because he lacks the money to make restitution as a condition of his probation. There, the defendant pleaded guilty to burglary and theft charges, but he was granted probation on the condition that he pay a fine of $500 and restitution of $250. The defendant paid part of that amount but failed to pay the balance when due and claimed poverty as the reason for nonpayment. The trial court revoked the defendant's probation and sentenced him to prison for violating the conditions of his probation.

The Supreme Court reversed. 461 U.S. at 674. It found that the sentencing court could not properly revoke defendant's probation for failure to pay a fine and make restitution without considering evidence and findings about:

- whether the probationer was somehow responsible for the failure; and
- if the probationer made a bona fide effort or was not at fault in failing to pay, whether alternative forms of punishment would be adequate to meet the State's interest in punishment and deterrence. 461 U.S. at 672-73.

10

Our court requires those same precautions before revoking a defendant's probation based on failure to pay restitution:

> "The clear message in *Bearden* is that when determining whether to revoke probation, the trial court must consider why a probationer failed to pay a fine or court costs or make restitution as required by the conditions of probation. *Automatic* revocation and imprisonment of the probationer is prohibited by the Fourteenth Amendment. As set forth in *Bearden*, then, a sentencing court must make two determinations to constitutionally revoke a defendant's probation. First, the probationer's conduct in failing to comply with the financial conditions of his probation must be considered. It must be determined whether the probationer willfully refused or was responsible for the failure to pay or whether the probationer made a bona fide effort to acquire the resources to pay. Imprisonment may be used as a means to enforce collection of fines or court costs or restitution when the probationer willfully refuses to pay, although he has the means to pay, or he does not make a bona fide effort to acquire the resources to pay. *Tate v. Short*, 401 U.S. 395, 91 S. Ct. 668, 28 L. Ed. 2d 130 (1971); *Williams v. Illinois*, 399 U.S. 235, 90 S. Ct. 2018, 26 L. Ed. 2d 586 (1970). If, however, the sentencing court determines that the probationer made a bona fide effort or is not at fault in failing to pay, the court should then consider alternative measures of punishment to imprisonment. Only if the alternative measures are inadequate to meet the State's interests in punishment and deterrence may the court imprison a probationer despite his bona fide effort to pay. Alternatives to imprisonment that have been suggested include reduction of the fine imposed, extension of time to pay, and performance of public service tasks in lieu thereof." *State v. Duke*, 10 Kan. App. 2d 392, 395, 699 P.2d 576 (1985).

Other alternatives to prison exist as well. The district court may consider using the civil judgment system to collect the outstanding restitution debt. See K.S.A. 2019 Supp. 20-169 ("Collection of debts owed to courts or restitution"); K.S.A. 2019 Supp. 22-3424(d) ("If the court orders restitution to be paid to the victim or the victim's family, the order shall be enforced as a judgment of restitution pursuant to K.S.A. 60-4301 through 60-4304, and amendments thereto."); *In re Troff*, 488 F.3d 1237, 1238 (10th Cir. 2007) (converting outstanding restitution amount to a civil judgment debt

11

at the end of defendant's probation term). Launching civil collections could make wage garnishment and property liens available as remedies to ensure that Beasley begins to pay off his restitution as soon as he begins receiving income. Those collection methods may be more likely to result in meaningful restitution payments than a prison sentence, which compounds a defendant's inability to pay by eliminating the opportunity for gainful employment.

Our review of the transcript from the 2018 hearing on Beasley's probation violations shows that the district court did not engage in these inquiries. But just as a district court's discretion in revoking probation is constrained by K.S.A. 2018 Supp. 22-3716, so too must its decision comply with the United States and Kansas Constitutions. We thus reverse the district court's revocation of Beasley's probation and remand for a new dispositional hearing consistent with the statutory and constitutional frameworks addressed in this opinion.

Reversed and remanded with directions.